425 P.2d 434

**PHOENIX TITLE AND TRUST COMPANY, an Arizona corporation, Appellant,**

v.

**STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellee.**

No. I CA–CIV 241.

Court of Appeals of Arizona.

March 20, 1967.

Rehearing Denied April 21, 1967.

Review Denied May 9, 1967.

Jennings, Strouss, Salmon & Trask, by O. M. Trask, Phoenix, for appellant.

Darrell F. Smith, Atty. Gen., by William H. Rehnquist, Special Asst. Atty. Gen., for appellee.

STEVENS, Judge.

This appeal concerns itself with the denial of an award for severance damages in connection with a condemnation of property for the construction of a controlled access interstate highway. This highway bears the designation of Interstate Highway 17.

The appellee was the plaintiff in the Superior Court and will be referred to as the State. The appellant was the defend-

ant in the Superior Court. It held title to the subject property in trust for a number of individuals. The appellant will be referred to as the owners. All measurements and distances as well as acreage will be stated in the opinion in approximate figures. There have been reproduced, and set forth as a part of this opinion, an illustrative schematic drawing which is found in the brief of the owners and one photograph which was received in evidence. The drawing of the land in question

illustrates the land's relationship to the interstate highway. The land extends easterly to 19th Avenue which is not shown on the drawing. The photograph illustrates the intersection shown in the drawing.

The date of taking was 6 February 1963. The physical situation applicable to the road and to the property before 6 February 1963 will be referred to as "the before situation" and the physical features after the taking and after the completion of the construction will be referred to as "the after situation". The construction of the interstate highway as well as the frontage roads and the underpass connecting the frontage roads, was completed prior to the trial as more

particularly appears from the exhibit which is incorporated in this opinion.

The interstate highway, generally known as Black Canyon Highway, runs generally in a north-south direction. For some time prior to the taking, Black Canyon has been one of the principal highways from the City of Phoenix to Northern Arizona. Prior to the taking, that portion of the interstate highway which lies south of the subject property closer to the City of Phoenix, was in the process of construction as a limited access freeway. Prior to the taking, Black Canyon in the neighborhood of the subject property, was a good, black topped roadway with a white dividing line in its center. By reason of there being but one dividing line, and the absence of lane lines, it was referred to as a two-lane highway with one lane of traffic in each direction. Black Canyon was capable of carrying four cars abreast, two in each direction. Black Canyon was on grade with the subject property as it passed the property.

In the before situation there were a number of east-west roads which intersected Black Canyon at substantially right angles, these roads being on grade and one mile apart. One such road was Beardsley Road. According to the map attached to the complaint, Beardsley Road lies along the section line between Section 24 on the north and Section 25 on the south. The map discloses a 66 foot right-of-way, for road purposes, 33 feet on each side of the section line. Although 66 feet were available for road purposes, Beardsley, in the before situation, was unimproved and the vehicular traffic was at a minimum.

The subject land of the owners contained approximately 483 acres. This land is bound on the west by Black Canyon and on the east by 19th Avenue. The distance from Black Canyon to 19th Avenue is approximately three-fourths of a mile. The land lies to the north and to the south of Beardsley, both parcels being of substantially equal size and both parcels being adjacent to and

having full access to Beardsley. 19th Avenue is a well traveled street which has a northerly terminus not far north of the subject property and it continues southerly to the City of Phoenix. In the before situation, in addition to having full access to Beardsley, the subject property had full access to both Black Canyon and 19th Avenue. While it is true that there was a small triangular parcel, too small to be of commercial value, which was located at the southwest corner of the northerly half of the subject property, the witnesses did not discount the value of the subject property by reason of the triangle. The triangle was taken by the State in other proceedings.

At the time of the taking, the subject land was vacant. At an earlier date, it had been used for agricultural purposes.

In the after situation, Black Canyon remained at its previous grade and the limited access highway was constructed upon the right-of-way in the before situation. An interchange was constructed at the junction of Black Canyon and Beardsley as well as at other one mile roads. The westerly 650 feet of Beardsley, at its point of contact with the subject property, was widened and paved, the paved portion being on a decline to the west. Beardsley then proceeded in its westerly course, not at grade with Black Canyon and the subject property, but approximately 18 to 20 feet below grade. After passing through the underpass at its Black Canyon intersection, Beardsley rose in elevation, by a similar incline, to grade with the land lying west of Black Canyon.

In place of the free access of Black Canyon in the before situation, a one-way northbound frontage road was constructed on the east side of Black Canyon adjacent to the subject property. A similar one-way southbound frontage road was constructed on the west side of Black Canyon. At a point approximately 1100 feet south of the Beardsley-Black Canyon intersection, the frontage road adjacent to the subject property starts a decline to the interchange and

from that point, proceeds north on an incline to grade reaching grade at approximately 1100 feet north of Beardsley.

In the before situation, the south portion of the subject property enjoyed approximately 2500 feet of free access to Black Canyon and the north portion enjoyed a substantially similar access. In the after situation, the south portion had a free access exposure to the one-way frontage road being approximately the south 1400 feet of the south 2500 feet of the subject property, and had like free access to the frontage road in relation to the northerly half of the subject property, that is to say, for approximately 1400 feet of the north 2500 feet of the subject property. At the interchange of Black Canyon and Beardsley, in the after situation, as is illustrated by the schematic drawing and the photograph made a part of this opinion, there was not only a complete loss of approximately 2200 feet of access to the west, there is in addition a loss of approximately 650 feet on each side of the westerly portion of Beardsley. In addition to the loss of access, the corners of the property formerly abutting Beardsley and Black Canyon, are 18 to 20 feet above the junction of the frontage road and Beardsley. All of the land and area to which access had been eliminated is fenced and the land adjoining the declines and inclines to Black Canyon and Beardsley is held in place by a cement protective cover.

One of the owners and two qualified appraisers testified on behalf of the owners. Two qualified appraisers and an economist testified on behalf of the State. In reaching their opinions as to value, the appraisers used the fair market value approach and relied strongly on their respective analyses of comparable sales. Three of the appraisers allocated a single value for each of the acres in the subject property. Mr. Blake, who testified for the owners, attributed greater values to the land fronting on Black Canyon and on 19th Avenue and lesser values to the interior acreage. This approach is similar to the one used in the case of State ex rel. Morrison v. Jay Six Cattle Company, Inc., 88 Ariz. 97, 353 P.2d 185 (1960).

The jury returned a verdict awarding compensation for the land taken and neither party questions this verdict in connection with the appeal. The verdict did not reflect either the high or the low testimony as to value. An arithmetic computation shows a value fixed by the jury very close to the testimony of one of the expert witnesses.

The major contest arose in relation to the contentions of the owners that they sustained severance damages. The issues on appeal revolve around rulings on evidence and upon instructions. The trial court made it possible for the jury to return a verdict of "no damages" in relation to the issue of severance damages and the jury returned that form of verdict.

Both parties rely heavily upon the case of State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960). In Thelberg, the old right-of-way was utilized for the site of the improved limited access freeway. This situation differs from the one presented to the Arizona Supreme Court in the case of Pima County v. Bilby, 87 Ariz. 366, 351 P.2d 647 (1960). Both Thelberg and Bilby are discussed in the Court of Appeals decision of State ex rel. Herman v. Wilson, 4 Ariz.App. 420, 420 P.2d 992 (1966). In relation to Wilson, the Court of Appeals rendered an opinion denying the motion for rehearing. This opinion was filed on 19 January 1967, and a petition for the review of the case by the Arizona Supreme Court, as of the time of the preparation of this opinion, is under consideration, by the Arizona Supreme Court.

Article II of Section 17 of the Arizona Constitution, 1 A.R.S., provides in part as follows:

"No private property shall be taken or damaged for public or private use without just compensation having first been made, or paid into court for the owner * * *."

In part, A.R.S. Section 12–1122 reads as follows:

"§ 12–1122. Ascertainment and assessment of value, damages and benefits

"A. The court or jury shall ascertain and assess:

"1. The value of the property sought to be condemned * * * and if it consists of different parcels, the value of each parcel * * * separately.

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the *damages* which will accrue to the portion not sought to be condemned *by reason of its serverance* from the portion sought to be condemned, *and the construction of the improvement in the manner proposed* by the plaintiff.

"3. How much the portion not sought to be condemned * * * will be benefited * * * if at all, by construction of the improvement proposed by plaintiff. If the benefit is equal to the damages assessed under paragraph 2 of this subsection, the owner of the parcel shall be allowed no compensation except for the value of the portion taken, but if the benefit is less than the damages so assessed, the benefit shall be deducted from the damages, and the remainder shall be the only damages allowed in addition to the value." (Emphasis supplied)

In Thelberg on page 325 of the Arizona Reports, on page 992 of 350 P.2d, the Arizona Supreme Court stated:

"When the controlled-access highway is constructed upon the right of way of the conventional highway and the owner's ingress and egress to abutting property has been destroyed or substantially impaired, he may recover damages therefor. The damages may be merely nominal or they may be severe. Other means of access such as frontage roads as in the instant case may be taken into consideration in determining the amount which would be just under the circumstances. Other means of access may mitigate damages * * *, but does not constitute a defense to the action however.

"The measure of damages for the destruction or impairment of access to the highway upon which the property of an owner abuts is the difference between the market value of the abutting property immediately before and immediately after the destruction or impairment thereof. The damages awarded the abutting landowner for destruction or impairment of access therefore is based, not upon the value of the right of access to the highway, but rather upon the difference in the value of the remaining property before and after the access thereto has been destroyed or impaired. This in turn is based upon the highest and best use to which the land involved is best suited before and after the right of access is molested. (Citations omitted)"

The State did not urge in the trial court a diminution of severance damages by reason of special benefits and so advised this Court on oral argument.

Over objection of the owners the trial court permitted evidence as to general benefits. The trial court permitted an appraiser, a witness called by the State, to testify as follows:

"Q In your opinion is the overall development potential of the subject property increased or decreased by the putting in of the limited access highway?

"THE WITNESS:

Yes, I found that the property would be enhanced in value by the freeways."

Over objection by the owners, the economist was permitted to testify to the effect that general benefits offset any severance damage. The following is illustrative of that testimony:

"Q Would you state the basis for the opinion?

"A The basis for that opinion is that it is adjacent to a freeway interchange, that it is flat, level land, that it has good traffic circulation on the back side, and that

that circulation has been enormously improved by the presence of Black Canyon.

"Q Do you mean by the limited access—

"A By the present limited access freeway. And that its proximity now to high density urban development to the south and the city of Phoenix, and its peripheral areas, is such that it has a much higher propensity for development, of urban development, at the present time."

■ It was error to permit testimony to the effect that the property experienced general benefits which could be used to offset the severance damages. State ex rel. State Highway Commission v. McCann, 248 S.W.2d 17, (Mo.App., 1952).

"A 'general benefit', as applied to a person whose property is being condemned for a highway, is one common (though it may be in a greater or lesser degree) to all other landowners in the vicinity of such road, including those whose land is not taken as well as those whose land is partly taken. A landowner from whom some land is taken is chargeable with the value of special benefits but not the value of general benefits. To charge a tract of land with the value of general benefits is to require its owner to pay for a benefit common to others who are themselves exempt from such payments." (Citing cases)

■■ As a matter of general law and in an attempt to offset the evidence erroneously received, the owners submitted Requested Instruction No. 9 which tendered instruction was refused. The instruction so refused is as follows:

*"DEFENDANT'S REQUESTED INSTRUCTION NO. 9*

"You are instructed that a 'general benefit' is a benefit which is not peculiar to the particular landowner, part of whose property is taken, but shared by him in common with the community or locality at large. A general benefit is nonetheless general merely because some enjoy it to a greater degree than others of the public at large.

"You are further instructed that in estimating damages to the remainder of the property not taken by the state, you may not take into consideration general benefits for the purpose of reducing the amount of the award, if any."

The court's instructions on general benefits is as follows:

"A person who owns land which abuts on a highway has two kinds of rights in that highway. One group of rights are those he enjoys with all other persons or with the general public. These rights are of no concern to us in these proceedings, for they have no relationship to the market value of the land itself."

It was error to refuse to give the jury the more complete explanation as to the law relative to general benefits as requested by the owners.

Our next problem relates to the instruction in relation to severance damages. Thelberg and the above quoted A.R.S. Section 12–1122 established the right to some award for severance damages in the absence of offsetting special benefits. As before stated, special benefits were not urged by the State at the trial or on appeal. In relation to the issue as to severance damage, the trial court emphasized that the jury had the privilege of denying an award for severance damages, even though that award might have been nominal. The court qualified its instructions in relation to the issue of severance damages by the use of the phrase "if any". This qualifying phrase is found three times in the instructions and is coupled with an instruction to the effect that if the jury finds an absence of severance damages, it should return a verdict for the State on that issue. This further limitation is found in State's Requested Instruction No. 6 which reads as follows:

"When a controlled-access highway is constructed upon the right-of-way of a conventional highway, and the right of ingress and egress to the highway on the part of an owner of abutting property has been destroyed or substantially impaired, he may under some circumstances recover

damages for such destruction or impairment, but to do so it is not enough that the owner show such destruction or impairment; to recover damages resulting from such destruction or impairment, the owner must show that there has been an actual decline in the value of his remaining property as a result. The burden is upon the defendant in this case to satisfy you that there is such a difference or decrease in value.

"Other means of access to the highway, such as a frontage road, may be taken into consideration to show mitigation of any damages, if there are such damages, deriving from loss or impairment of access."

(Note: The court modified the requested instruction by eliminating the last quoted paragraph.)

▮▮▮ The owners tendered Requested Instructions Numbered 6 and 8:

"DEFENDANT'S REQUESTED INSTRUCTION NO. 6

"In this case the evidence shows without dispute that the owner's ingress and egress to their abutting property has been partially destroyed or substantially impaired.

"In such a situation the owners may recover damages therefor. Other means of access such as frontage roads as in the instant case may be taken into consideration in determining the amount which would be just under the circumstances. Other means of access may mitigate damages, but do not constitute a defense to the action."

"DEFENDANT'S REQUESTED INSTRUCTION NO. 8

"I instruct you that the measure of damages for the destruction or impairment of access to the interstate highway upon which the defendant's property abuts, is the difference between the market value of the abutting property immediately before and immediately after the destruction or impairment of the easement or right of access.

"The damages *if any* may be merely nominal or they may be severe. Other means of access such as frontage roads may be taken into consideration in determining the amount which would be just under the circumstances. Such other means of access, to the extent they are proved, may mitigate damages, but do not constitute a defense to the action."

In the above quoted Requested Instruction No. 8, the words "if any" are underscored in that the court, on its motion, first modified Requested Instruction No. 8 by inserting these words and then refused the instruction as modified. The owners objected to any modification. While the first two paragraphs of these requested instructions are somewhat duplicitous, it is our opinion that the first paragraph of each requested instruction, combined with the second paragraph of Instruction No. 6, should have been given. The record is silent as to any objection on the grounds of duplication.

▮▮ The owners further urge that the first paragraph of their Requested Instruction No. 6 is a correct statement of the law under the facts of this case and should have been given. There can be no doubt under the evidence, both the express statements of the witnesses and the exhibits which were presented to the jury, that there was at least some impairment of access. Where there is no dispute as to a fact, it is appropriate to instruct to that effect. Wolff v. First National Bank, 47 Ariz. 97, 53 P.2d 1077 (1936).

The owners offered a witness with whom the subject property had been listed for sale in the after situation. The trial court sustained the objections of the State and the owners made the following offer of proof which was also rejected:

"MR TRASK: We offer to prove by this witness that this property has been listed for sale and it is not—he has not been able to sell it at the listing price, which was $3,500 on terms, $2,500—$2,900 on cash, and that one of the reasons he has not been able to sell it is that the property has been damaged by the construction.

"The evidence is offered in rebuttal of the testimony of the two witnesses of the State, who testified that the construction of the improvements did not affect the value of the property.

"And we submit that evidence by way of an attempt to sell it, of a reputable organization having a sales force, is some evidence of value in the after situation, and particularly the reduction in value, and in direct rebuttal, in addition, of the testimony of the State's witnesses who testified that as of the valuation date that a willing buyer and willing seller, within a reasonable time thereafter, could have sold this property at no reduction in value from the $4,000 and the $4,300."

The owners offered similar testimony through one of the owners of the property which was likewise rejected. The State urged that the evidence was not proper rebuttal and that it was not competent evidence.

As hereinbefore stated, the witnesses based their testimony as to value on the fair market value guidelines. In connection with this phase of the case, and without objection, the court instructed the jury as follows:

"Now fair market value as that term is used in these instructions is the highest price estimated in terms of money which the property would bring if offered for sale in the open market under the conditions prevailing as of the date of valuation with a reasonable time allowed in which to find a purchaser or purchasers, buying with the knowledge of all the use or uses of which the land is adaptable or of which it is available, the seller being willing to sell, but of no particular or urgent necessity of so doing or obligated to sell, and the buyer being ready, willing or able to buy, but under no particular necessity for so doing.

"This definition for fair market value presupposes that both parties are familiar with the property and its adaptability and uses."

The definition which the expert witnesses used in relation to fair market values, while not in the exact language of the instruction, was substantially similar to the instruction.

 The State urges that if an owner testifies to a particular value, his testimony may be discredited by showing that he listed the property at a lesser value. Both parties concede that an owner's offer to sell at a given price may not be received for the purposes of establishing fair market value. It is the opinion of the Court that the ruling of the trial court under the circumstances of this case was proper. No expert witness for the State was asked whether his opinion as to fair market value would be affected by facts similar to those set forth in the offer of proof. We express no opinion as to the propriety of that line of questioning on cross-examination, or as to whether if that line of questioning is appropriate on cross-examination, it would be a sufficient foundation for rebuttal testimony similar to that contained in the offer of proof.

In view of the errors in relation to matters concerning general benefits and in relation to severance damages, this cause is reversed for a re-trial on the issue of severance damages only.

DONOFRIO, Acting C. J., and KENNETH C. CHATWIN, Judge of the Superior Court, concur.

NOTE: JAMES DUKE CAMERON, Chief Judge, having requested that he be relieved from the consideration of this matter, Superior Court Judge KENNETH C. CHATWIN was called to sit in his stead and participate in the determination of this cause.