735 P.2d 460

**John BARRETT, Plaintiff-Appellee,**

v.

**SAMARITAN HEALTH SERVICES, INC., an Arizona corporation; and Maryvale Emergency Physicians, Ltd., an Arizona corporation, Defendants-Appellants.**

**No. 1 CA–CIV 8895.**

Court of Appeals of Arizona, Division 1, Department B.

March 26, 1987.

Cunningham, Tiffany & Hoffmann, P.A. by James P. Cunningham and William J. Monahan, Phoenix, for plaintiff-appellee.

Debus, Bradford & Kazan, Ltd. by Michael E. Bradford and Tracey J. Westerhausen, Phoenix, for defendants-appellants.

HAIRE, Judge.

This appeal arises from a medical malpractice action against the appellants Samaritan Health Services, Inc. and Maryvale Emergency Physicians Ltd. The following issues are raised on appeal:

I. Did the trial court err in determining that a pediatrician was competent to testify on the applicable standard of care?

II. Did the trial court improperly comment on the evidence?

III. Did the trial court improperly instruct the jury concerning the Medical Liability Review Panel's decision concerning Dr. Gonzalez?

IV. Did the trial court err when it vacated a provision of its prior partial summary judgment?

V. Did the trial court err in refusing to enter a directed verdict in favor of Samaritan Health Services based on plaintiff's failure to show a *prima facie* case of agency between the defendants?

VI. Did the trial court err in refusing to enter a directed verdict in favor of Maryvale Emergency Physicians?

Since no issues are raised concerning the sufficiency of the evidence to support the jury's finding that malpractice occurred, the facts will not be set forth in detail. Suffice it to say that the case was submitted to the jury based upon the plaintiff's claim that the malpractice of Dr. Adelberto Gonzalez resulted in the wrongful death of the four and one-half month old daughter of the plaintiff. The claims against the two defendants were based on their alleged derivative liability for the negligence of Dr. Gonzalez, who was not a defendant in this case.

The two defendants were Samaritan Health Services ("Samaritan"), the owner of Maryvale Samaritan Hospital, and Maryvale Emergency Physicians, Ltd., a group of doctors under contract with Samaritan to provide emergency medical care in the hospital. Maryvale Emergency Physicians employed Dr. Gonzalez to work part-time in the emergency room.

The plaintiff's claims were initially presented before a medical liability review panel, pursuant to A.R.S. § 12–567. The panel included a physician practicing in pediatrics. On the claim based on the alleged negligence of Dr. Gonzalez, the panel found in favor of the plaintiff and against "defendant Dr. Gonzalez." As previously stated, however, Dr. Gonzalez had never been a named defendant in the lawsuit. The plaintiff's other two claims against the hospital and Maryvale Emergency Physicians, which claims were not based on the defendants' deriviative liability for the acts of Dr. Gonzalez, were rejected by the panel.

At the subsequent jury trial, the jury found for the plaintiff and against both Samaritan and Maryvale Emergency Physicians, and awarded damages of $150,000 to the plaintiff John Barrett, and $200,000 to Stephanie Barrett, the mother of the deceased child.

We address each of the issues in this appeal in the order in which they have been presented by the appellants. Additional facts will be added, as necessary, to aid in the discussion of each issue.

## I. EXPERT TESTIMONY

The defendants argue that the trial court erred in determining that Dr. Mark Kishel was competent to testify concerning the standard of care applicable to Dr. Gonzalez. Dr. Kishel is a pediatrician, whereas Dr. Gonzalez was, at the time of treatment, a third year surgical resident. Dr. Kishel testified that the treatment provided by Dr. Gonzalez fell below the minimum standard of care of pediatricians, general and family practitioners, and emergency room physicians, all of whom frequently encounter the condition which resulted in the infant's death.

Appellants suggest that the record does not show that Dr. Kishel was competent to testify concerning the standard of care for each of these specialties, and further, that the standard of care would not be the same for each specialty. Therefore, they urge that the admission of his testimony was in error.

■ A.R.S. § 12–563 sets forth the requirement of proof in a medical malpractice action. The plaintiff must show that the health care provider failed to exercise the degree of care expected of a reasonably prudent health care provider "in the profession or class to which he belongs...." A.R.S. § 12–563. The standard of care must generally be established by expert medical testimony. *Evans v. Bernard,* 23 Ariz.App. 413, 416, 533 P.2d 721, 724 (1975). An expert witness, however, need not be of the same specialty as the defendant to be competent to testify on the standard of care. *Taylor v. Dirico,* 124 Ariz. 513, 518, 606 P.2d 3, 8 (1980); *Gaston v. Hunter,* 121 Ariz. 33, 53, 588 P.2d 326, 346 (App.1978). The witness may base his testimony on his "education, experience, observation or association with that specialty." *Taylor v. Dirico,* 124 Ariz. at 518, 606 P.2d at 8. In addition, if a witness is familiar with the standard of care of one specialty and it is established that the standard of care for the defendant's specialty is the same, the witness may be competent to testify. *Gaston v. Hunter,* 121 Ariz. at 54, 588 P.2d at 347.

■ Dr. Kishel testified that he assisted in the supervision and instruction of interns and residents in the diagnosis and treatment of infants with conditions similar to that of the deceased infant in this case, and, further, that he was familiar with the standard of care a prudent physician would follow in an emergency room situation for such an infant. He also testified that the infant's condition was a common condition seen by pediatricians, family physicians, and emergency room physicians and that he was familiar with the standard of care

required of those specialists in an emergency room setting.

In our opinion, the essence of Dr. Kishel's testimony was that by reason of his experience he was familiar with the standard of care applicable to Dr. Gonzalez' conduct in this case. Accordingly, we hold that the trial court did not err in overruling the defendants' objections to his testimony as to the applicable standard of care.

## II. COURT'S COMMENTS

The defendants argue that the trial court improperly commented on the evidence in violation of the Arizona Constitution. Article 6, § 27 provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

### A. Court's Remarks During Constance Cockrum's Testimony

During the defendants' cross-examination of Constance Cockrum, the infant's grandmother, the trial judge made several remarks. The subject of the cross-examination was Mrs. Cockrum's reading of the thermometer when she determined that the infant's temperature was just under 106 degrees. A high temperature would have been inconsistent with the defendants' position as to the cause of death. Defense counsel handed Mrs. Cockrum a thermometer, identical to the one she had purchased and used to take the infant's temperature the day before her death, after which the following interchange occurred:

"Q. [By defense counsel, Mr. Bradford] I can never read those things [thermometers]. Would you open that for me and tell me what it reads now?

"A. [By Mrs. Cockrum] You have to excuse me, I have to hold it. I don't even see a reading on this thermometer.

"THE COURT: Let me see it, ma'am.

"MR. BRADFORD: Maybe you got a bad one.

"MR. MONAHAN: Object to Counsel's statement. There is no foundation, first of all, that there would be a reading.

"MR. BRADFORD: I am sorry, Counsel, I withdraw.

"THE COURT: If Counsel wants to look at it, it looks to me like the thermometer hasn't been shaken down. It looks like about 108.

"MR. MONAHAN: Thank you, Your Honor.

"Q. [By Mr. Bradford] Why don't you look at that again, ma'am. See if you agree with His Honor.

"A. [By Mrs. Cockrum] Well, it's all the way up or its all the way down, one or the other.

"THE COURT: The silver goes all the way to the right, doesn't it, ma'am?

"THE WITNESS: It looks like it."

Defendants contend that the judge's comments resulted in prejudice to them by depriving the jury of the opportunity to draw a critical inference. They were trying to show that Mrs. Cockrum's reading of the thermometer was inaccurate and that the infant did not have a high fever. A review of the testimony, however, suggests that this point was made when Mrs. Cockrum stated, "I don't even see a reading on this thermometer," *prior* to the trial judge's remark that it looked like it hadn't been shaken down. Even after the judge's statement, Mrs. Cockrum commented that the thermometer looked like it was all the way up *or* all the way down. Any critical inference that Mrs. Cockrum had difficulty reading the thermometer was there to be made by the jury if it so chose.

In order to justify a new trial, the court must express an opinion on what the evidence proves. *State v. Barnes*, 124 Ariz. 586, 606 P.2d 802 (1980). The judge was merely attempting to clarify the exhibit. He did not express an opinion on its significance. We find no improper comment.

### B. Instruction Concerning the Medical Liability Review Panel's Conclusions

A.R.S. § 12-567 provides, in pertinent part:

"K.... The conclusion of the panel may be admitted into evidence in any subsequent trial. Parties may, in the opening statement or argument to the

court or jury, comment on the panel's conclusion in the same manner as any other evidence introduced at trial. Panel members may not be called to testify as to the merits of the case. The jury shall be instructed that the conclusion of the panel shall not be binding but shall be accorded such weight as they choose to give it."

The defendants contend that the following jury instruction should not have been given to the jury:

"Plaintiff's claim of negligence by Dr. Gonzalez was previously submitted to a Medical Liability Review Panel consisting of a Superior Court Judge, a lawyer, and a medical doctor specializing in pediatrics. The Panel unanimously found for the Plaintiff John Barrett and against Dr. Gonzalez on Plaintiff's claim that Dr. Gonzalez fell below the standard of care in his examination, evaluation and treatment of Lindsay Barrett [the deceased infant]."[1]

The defendants contend that the trial court's instruction was improper because the trial court instructed the jury as to the contents of the panel's conclusion, rather than having the decision itself *admitted into evidence*, as contemplated by A.R.S. § 12–567(K). The defendants do not contend that the instruction misinformed the jury or inaccurately presented the contents of the panel's decision to the jury.

The purpose of jury instructions is to inform the jury of the applicable law in terms it can readily understand. *Noland v. Wootan*, 102 Ariz. 192, 194, 427 P.2d 143, 145 (1967). Where there is no dispute as to a fact, it is appropriate to instruct the jury to that effect. *Phoenix Title and Trust Co. v. State ex rel. Herman*, 5 Ariz.App. 246, 254, 425 P.2d 434, 442 (1967). The purpose of Article 6, § 27 is to prohibit judges from expressing their opinion concerning the validity or credibility of the evidence presented at trial. *Eastin v. Broomfield*, 116 Ariz. 576, 582, 570 P.2d 744, 749 (1977). "A judge who is

shrouded with authority by virtue of his position in presiding at a trial, will, if he is permitted to comment on the evidence, unduly influence the jury and this danger is greatest when the judge is instructing the jury." *Id.*, 116 Ariz. at 581, 570 P.2d at 749. Further, it is an invasion of the jury's province if an instruction indicates that the court has attached special significance to particular testimony or evidence. *Public Service Co. of Oklahoma v. Bleak*, 134 Ariz. 311, 319, 656 P.2d 600, 608 (1982).

A.R.S. § 12–567(K) permits medical liability review panels' conclusions to be admitted into evidence. A review of the trial transcript reveals numerous references and comments by counsel concerning the panel's conclusions. The panel's conclusion in favor of the plaintiff and against Dr. Gonzalez could not be disputed. The instruction merely informed the jury of an uncontroverted fact, *see Phoenix Title and Trust*, 5 Ariz.App. 246, 425 P.2d 434, and then further instructed the jury that the conclusion was not legally binding. *See* A.R.S. § 12–567(K). The trial judge did not express an opinion on the panel's decision. Further, a reading of the entire instruction leads us to conclude that its purpose was to properly inform the jury, as required by A.R.S. § 12–567(K), that the panel's decision was not binding. Some reference to the panel's decision was necessary as a predicate to advising the jury of the non-binding nature of that decision. Under these circumstances, we hold that the inclusion of the substance of the panel's decision in the jury instruction did not constitute an undue emphasis or comment on the evidence by the judge so as to fall within case law or constitutional limitations.

### III. ADMISSION OF THE MEDICAL LIABILITY REVIEW PANEL'S DECISION

The defendants urge that because Dr. Gonzalez was not a defendant, and therefore not subject to the panel's jurisdic-

---

1. The instruction further stated:
 "This conclusion of the Medical Liability Review Panel is evidence which you may con-
 sider like any other expert opinion evidence. It is not a judicial decision or decree."

tion, the trial court erred in advising the jury of the medical liability review panel's decision against Dr. Gonzalez.

A.R.S. § 12–567(F) provides:

"The [medical liability review] panel shall determine, with respect to each claim against each *defendant,* whether the evidence presented to the panel by all parties supports a judgment for the plaintiff or for the defendant." (Emphasis added).

The medical liability review panel concluded, *inter alia:*

"1. By a vote of three to zero, the panel finds for the plaintiff and against defendant Dr. Gonzalez on plaintiff's claim that Dr. Gonzalez fell below the standard care in his examination, evaluation and treatment of Lindsay Barrett [the deceased infant]."

The thrust of the defendants' argument is that the panel did not have the authority to render a decision against Dr. Gonzalez since he was not a named defendant in the lawsuit. Accordingly, they urge that the panel's finding was not authorized by A.R.S. § 12–567(F).

The medical liability review panel is obligated to render a finding on each of the plaintiff's claims. *Barnet v. Superior Court,* 124 Ariz. 467, 605 P.2d 445 (1980). The plaintiff in this case made three separate claims,[2] one of which alleged that Dr. Gonzalez, an employee of Maryvale Emergency Physicians, negligently examined the deceased infant. The medical liability review panel was obligated to render a finding on that claim. *Id.*

Although the statute does speak in terms of findings against each "defendant," we find nothing in the statute which indicates an intention to preclude the panel from evaluating the conduct of a non-defendant physician when it is alleged that the named defendants are vicariously liable for the negligent conduct of that physician. We refuse to imply such a preclusion so as to deprive the panel of jurisdiction in such circumstances. Obviously, in this case the panel's formal order was erroneous in its reference to Dr. Gonzalez as a "defendant." In our opinion, however, this was not prejudicial to the defendants.

Here, the jury was instructed relating to the employee/employer relationship between Dr. Gonzalez and Maryvale Emergency Physicians, as well as the agency relationship claimed to exist between Samaritan and Maryvale. We therefore find that the error in the panel's order did not affect its validity as a finding on the claim involving the conduct of Dr. Gonzalez, and that the trial court did not err in submitting the panel's finding concerning the conduct of Dr. Gonzalez to the jury.

## IV. VACATING PROVISION OF COURT'S PREVIOUS PARTIAL SUMMARY JUDGMENT

■ The defendants argue that the trial court should not have vacated a provision of its previous partial summary judgment in favor of Samaritan and against Maryvale, to the effect that Samaritan would be entitled to indemnification from Maryvale in the amount of any judgment rendered against Samaritan. Specifically, a provision in the judgment stating that the jury would be so instructed was vacated by the trial court, after the jury was empaneled and defense counsel conducted *voir dire* on this matter.[3] The trial court concluded that to so instruct would be unnecessarily confusing and misleading to the jury.

---

2. On the two remaining claims, not pertinent to this discussion, the panel found in favor of the defendants.

3. The judgment, in pertinent part, read:
"3. Defendant SAMARITAN HEALTH SERVICES' Motion for Partial Summary Judgment against the defendant, MARYVALE EMERGENCY PHYSICIANS, on the issue of indemnification is hereby granted to wit: In the trial of this action, the jury shall be instructed that in the event they determine that MARYVALE EMERGENCY PHYSICIANS or its employees were acting as the agents of SAMARITAN HEALTH SERVICES and not as independent contractors and on that basis find SAMARITAN HEALTH SERVICES liable and rendered [sic] judgment against it, they shall enter judgment in a like amount in favor of SAMARITAN HEALTH SERVICES and against MARYVALE EMERGENCY PHYSICIANS, INC."

The defendants argue that this ruling prejudiced them because they had based their trial strategy on the premise that the jury would be so instructed. Counsel for Maryvale Emergency Physicians was concerned about its interest being merged with that of Samaritan, a "deep pocket." Counsel states that Maryvale Emergency Physicians would have chosen to have Samaritan participate directly in the trial, and that Maryvale would not have accepted Samaritan's tender of its defense to Maryvale if it had known that the trial judge would not comply with the provisions of the previously entered partial summary judgment. The plaintiff points out that the defendants did not seek a continuance of the trial or make any effort to produce a representative of Samaritan for presence at counsel's table prior to the presentation of evidence, after defendants were advised of the trial court's concern on this issue.

The plaintiff also points out that the order entered granting partial summary judgment was not in accord with the trial court's minute entry, which made no mention of instructing the jury on Samaritan's right of indemnification.[4] Plaintiff suggests that the language in the order was clearly a mistake because *Samaritan* neither sought this type of relief in its motion for partial summary judgment nor in its proposed form of judgment. The form of judgment which was ultimately signed by the trial court was submitted by Maryvale.

A review of the transcript at trial during which this issue was initially raised reveals that both plaintiff's counsel and the trial judge were under the impression that the judgment did *not* contain language that the jury would be instructed concerning Samaritan's right of indemnification. Although in our opinion the trial judge incorrectly relied on the "clerical mistake" provisions of Rule 60(a), Arizona Rules of Civil Proce-

dure, as authority for his revision of the prior summary judgment order, we note that the trial court's correction did not change the substantive ruling made in the partial summary judgment in favor of Samaritan. He clearly had authority to revise the prior order, since it did not contain the finality language authorized by Rule 54(b), Arizona Rules of Civil Procedure. In the absence of such language, Rule 54(b) provides that any judgment which adjudicates less than all the claims or the rights and liabilities of less than all the parties "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties." Of course, such revision would not be permitted under circumstances which would be unduly prejudicial to the opposing party's right to fairly prepare and present its case. We have reviewed the arguments presented by counsel, the trial judge's comments, and the record, and we find no prejudice sufficient to warrant a determination that the trial judge abused his discretion on this issue.

## V. DIRECTED VERDICT FOR SAMARITAN

■ Defendants argue that the trial court erred in refusing to direct a verdict for Samaritan because the plaintiff failed to show a *prima facie* case of agency between Samaritan and Maryvale Emergency Physicians.

A motion for directed verdict admits the truth of the opposing party's competent evidence and any reasonable inferences that can be drawn from that evidence. *Rocky Mountain Fire and Casualty Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 291–92, 640 P.2d 851, 853–54 (1982). The evidence must be viewed most favorably for the opposing party. *Byrns v. Riddell, Inc.*, 113 Ariz. 264, 268, 550 P.2d 1065, 1069

---

4. The minute entry read:

"IT IS FURTHER ORDERED granting Defendant Samaritan Health Services' Motion for Partial Summary Judgment against Defendant [Maryvale Emergency Physicians] on the issue of indemnification. Since Defendant [Samaritan Health Services] may be vicariously liable for [Maryvale Emergency Physi-

cians'] conduct pursuant to *Beeck v. Tucson General Hospital, supra,* [18 Ariz.App. 165, 500 P.2d 1153] on the basis of respondeat superior, [Maryvale Emergency Physicians] would then have the duty to indemnify [Samaritan Health Services] for any Judgment rendered against [Samaritan Health Services] for [Maryvale Emergency Physicians'] action."

(1976). Here, there was a defense motion for a directed verdict on behalf of Samaritan at the close of plaintiff's case and at the conclusion of all the evidence.

In our opinion, *Beeck v. Tucson General Hospital*, 18 Ariz.App. 165, 500 P.2d 1153 (1972), is dispositive. A review of the record reveals sufficient evidence to support a finding of vicarious liability based on the principles set forth in *Beeck*. The testimony revealed that Samaritan provided the emergency room facilities and equipment. Pursuant to their contract, Maryvale Emergency Physicians provided physician coverage of Samaritan's emergency room. Samaritan provided nurses and all other support personnel. Samaritan also promulgated rules and procedures to be followed by Maryvale in treating emergency room patients, and a failure to adhere to these regulations could provide a sufficient basis for the termination of the contract by Samaritan. Moreover, the plaintiff did not have the opportunity to choose which physician treated the child. The patient was taken to Samaritan's emergency room, and the hospital determined that a physician associated with Maryvale would examine the child. The evidence falls squarely within the ostensible agency principles established in *Beeck*.

## VI. DIRECTED VERDICT FOR MARYVALE EMERGENCY PHYSICIANS

 Lastly, the defendants argue that if the trial court properly denied Samaritan's motion for directed verdict, then it improperly denied Maryvale Emergency Physicians' motion for directed verdict, under the principle of law set forth in *Donn v. Kunz*, 52 Ariz. 219, 79 P.2d 965 (1938), and *Barker v. General Petroleum Corp.*, 72 Ariz. 187, 232 P.2d 390, *modified on other grounds*, 72 Ariz. 238, 233 P.2d 449 (1951). These cases hold that an agent is not liable to third persons for the acts of his subagents employed by him in the service of his principal unless he committed fraud or gross negligence in their hiring, or cooperated in the subagent's acts. *See Barker*, 72 Ariz. at 196, 232 P.2d at 396.

As the defendants point out, there was no evidence that Maryvale Emergency Physicians was negligent in the hiring of Dr. Gonzalez or an active participant in his negligent acts.

In our opinion, the principle discussed in *Donn* and *Barker* has no application to the facts of this case. Here, Samaritan has been held liable, not because either Dr. Gonzalez or Maryvale Emergency Physicians were the actual employees or actual agents of Samaritan. Rather, Samaritan's vicarious liability stems from the application of ostensible or apparent agency principles. Dr. Gonzalez was not a sub-employee or sub-agent of Samaritan. Maryvale Emergency Physicians was in reality the only employer of Dr. Gonzalez. Under these circumstances, it would be illogical not to apply ordinary principles of *respondeat superior* so as to render Maryvale vicariously liable for the negligent conduct of its employee, Dr. Gonzalez. To hold otherwise would defeat the holding in *Beeck* and well-entrenched principles of *respondeat superior* and vicarious liability. We also note that under the judgment in this case Samaritan is entitled to indemnification from Maryvale for the judgment rendered against Samaritan. Accordingly, Maryvale would be the ultimately liable party, even if the *Donn* and *Barker* principle were applicable in this case. We therefore hold that the trial court did not commit error by refusing to direct a verdict for Maryvale.

In the exercise of the court's discretion, plaintiff's request for attorney's fees on appeal is denied.

The judgment is affirmed.

JACOBSON, P.J., and GREER, J., concur.