NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JACKSON R. MAUNEY, et al., *Plaintiffs/Appellants*,

*v.*

NAVED KHAN, et al., *Defendants/Appellees*.

No. 1 CA-CV 22-0530

FILED 09-10-2024

Appeal from the Superior Court in Maricopa County
No. CV2019-015581
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

COUNSEL

Bailey Law Firm PLLC, Tempe
By Jenna C. Bailey
*Counsel for Plaintiffs/Appellants*

Jones Skelton & Hochuli PLC, Phoenix
By Eileen Dennis GilBride
*Counsel for Defendants/Appellees Naved Khan and Barjinder Bir-Singh Bhullar*

Wicker Smith O'Hara McCoy & Ford, P.A., Tempe
By Bruce D. Crawford
*Co-Counsel for Defendant Barjinder Bir-Singh Bhullar*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Andrew M. Jacobs joined.

---

**T H U M M A** , Judge:

**¶1** Plaintiffs Betsy, Jackson and Thad Mauney appeal from the grant of summary judgment for defendants Naved Khan and Barjinder Bir-Singh Bhullar in this medical malpractice and Adult Protective Services Act (APSA) case. Because plaintiffs failed to show required causation, summary judgment is affirmed.

**FACTS AND PROCEDURAL HISTORY**

**¶2** On Friday, December 15, 2017, Betsy (who was 90 years old at the time) fell at her home and was evaluated at Banner Health dba Banner Desert Medical Center's Emergency Department. CT scan images showed multiple thoracic fractures, which were thought to be chronic. Betsy had a history of multiple compression fractures and a previous kyphoplasty, using a type of "bone cement" to stabilize the spine and reduce pain. Khan, a hospitalist, performed a history and physical examination and admitted Betsy to the hospital.

**¶3** Jackson, Betsy's husband, asked Khan if a kyphoplasty could be performed. Khan ordered a consultation to determine whether Betsy would be a candidate for the procedure. A physician assistant examined Betsy and ordered an MRI of the spine with the intent to follow up the next week on an outpatient basis to determine whether a kyphoplasty would be appropriate. Imaging from the MRI performed later that day showed a thoracic compression fracture.

**¶4** Betsy began showing signs of aspiration pneumonia early Monday, December 18, 2017, and failed a swallow study, meaning she was not eligible for a kyphoplasty. Khan and Bhullar (also a hospitalist) continued to evaluate and treat Betsy for more than two weeks. After Betsy stabilized, she ultimately underwent a kyphoplasty on January 3, 2018.

**¶5** The Mauneys sued Khan, Bhullar and Banner,[1] alleging medical malpractice and a violation of APSA because of the delayed kyphoplasty. The Mauneys disclosed Dr. Martin D. Mollen as their causation expert. After Mollen's deposition, Khan and Bhullar moved for summary judgment arguing the Mauneys failed to prove causation via expert testimony as required under Arizona law. After full briefing, the superior court granted summary judgment.

**¶6** This court has jurisdiction over the Mauneys' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1) (2024).[2]

## DISCUSSION

**¶7** This court reviews de novo the grant of summary judgment to determine whether the superior court properly applied the law and whether any genuine issues of material fact exist. Ariz. R. Civ. P. 56(a); *Orme School v. Reeves*, 166 Ariz. 301, 310 (1990). This court reviews the record in the light most favorable to the nonmoving party. *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373 ¶ 13 (2021).

## I. The Applicable Legal Standards.

**¶8** As applicable here, to prove medical negligence and an APSA violation, the Mauneys must establish through expert testimony that the defendant health care providers breached the applicable standard of care and proximately caused harm. *See* A.R.S. § 12–563; *Barrett v. Samaritan Health Servs., Inc.*, 153 Ariz. 138, 141 (App. 1987); *Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 54 (App. 1985).

**¶9** To establish causation, a plaintiff must show "a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have occurred." *Sampson v. Surgery Ctr. of Peoria, LLC*, 251 Ariz. 308, 311 ¶ 15 (2021). To take such a claim to trial, a plaintiff must show that causation was probable, not merely possible. *See Benkendorf v. Advanced Cardiac Specialists*

---

[1] The superior court granted summary judgment to Banner, which this court recently affirmed. *Mauney v. Banner Health*, 1 CA-CV 22-0268 (Ariz. App. June 20, 2024) (mem. decision).

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

*Chartered*, 228 Ariz. 528, 530 ¶ 8 (App. 2012); *Kreisman v. Thomas*, 12 Ariz. App. 215, 218 (1970) ("causation must be shown to be *probable* and not merely *possible*, and generally expert medical testimony that a subsequent illness or disease 'could' or 'may' have been the cause of the injury is insufficient") (emphasis added). Causation is a question for the jury "unless reasonable persons could not conclude that a plaintiff had proved this element." *Barrett v. Harris*, 207 Ariz. 374, 378 ¶ 12 (App. 2004).

¶10 Relying on *Windhurst v. Arizona Dep't of Corr.*, 256 Ariz. 186 (2023), the Mauneys argue the superior court failed to "connect the dots" between Mollen's standard of care and causation testimony. *Windhurst* concluded that expert testimony in that case was sufficient to link a breach of the applicable standard of care with proximate causation. *Id.* at 194-96 ¶¶ 24-45. *Windhurst* thus found a jury could reasonably rely on the expert testimony without impermissibly inferring causation and reversed the superior court's grant of summary judgment to the defendants. *Id.* at 196 ¶ 45. *Windhurst*, however, did not change Arizona law about the degree of proof required to link a breach of the standard of care with the causation testimony to maintain a medical malpractice action.

¶11 Here, there is a failure to connect the dots between standard of care and causation testimony. There is simply no evidence in the record that had either physician advocated for an earlier kyphoplasty, then more likely than not, Betsy would have had the procedure sooner.

## II. Mollen Did Not Establish Khan Harmed Betsy.

¶12 Khan was Betsy's attending hospitalist beginning Friday, December 15, 2017. Khan continued to treat and monitor Betsy during her hospitalization until December 23, 2017.

¶13 Mollen testified that it was safe to perform a kyphoplasty on Betsy during her first three days of admission, or after December 30. Mollen testified that sometime on December 16 or 17, Betsy was converted from an "observational" admission to a "regular" admission. He opined that, once such a conversion occurred and it became clear that the kyphoplasty could not be done on an outpatient basis, Khan should have called the interventional radiologist and advocated that the kyphoplasty be done on an inpatient basis. Mollen opined that, had the kyphoplasty been done on December 16, 17 or 18, then Betsy would not have had to suffer a weeks-long hospitalization, would have had less pain medication, would have been more comfortable sooner, and may have been able to swallow better sooner.

¶14        The record, however, does not support that Betsy more likely than not would have undergone the procedure earlier even if Khan had requested it or advocated for it. Mollen admitted it was not a hospitalist's decision, but that of the interventional radiologist physician, or his or her colleagues, to perform a kyphoplasty. The interventional radiology physician assistant testified he would not have performed the procedure on December 16, 17 or 18 even if asked to do so. He testified kyphoplasties are not emergency procedures and are typically done on an outpatient basis. He testified that conservative treatment is usually done first for about a week to see if pain is alleviated without having to do a kyphoplasty. He also testified that part of his plan when he saw Betsy on December 15 was to first try conservative management before she would be considered a candidate for kyphoplasty. The physician assistant also reviewed Betsy's MRI before his deposition and testified that nothing about it suggested a kyphoplasty be done on an emergency basis.

¶15        For the rest of the time that Khan was Betsy's attending hospitalist, Betsy could not undergo a kyphoplasty. On this record, the Mauneys failed to provide evidence showing a reasonable probability that Khan harmed Betsy.

## III.    Mollen Did Not Establish Bhullar Harmed Betsy.

¶16        Bhullar was Betsy's nocturnist on the nights of December 17/18 and 18/19. Mollen was not critical of any care Bhullar provided to Betsy on these dates. Bhullar also served as the day-shift hospitalist for Betsy from December 23 through 26. Mollen conceded that Betsy was not a candidate for kyphoplasty from December 18 through at least December 30.

¶17        The Mauneys argue that, because Betsy's pulmonologist wrote a note on December 25 that "we can begin planning to do the procedure," Bhullar should have then started arranging for a kyphoplasty to be done as soon as Betsy was cleared for the procedure.

¶18        But Mollen did not explain how Bhullar, or anyone else, would have known between December 23 and 26 that Betsy would improve enough such that the pulmonologist would release her for possible surgery starting December 30. Mollen could not testify to a reasonable degree of medical probability that Betsy would have had a better recovery had the surgery been performed on December 30 versus January 2. Mollen conceded he did not know whether Bhullar advocating would have succeeded in getting a kyphoplasty done between December 30 and

January 2. On this record, the Mauneys failed to provide evidence showing a reasonable probability that Bhullar harmed Betsy.

## IV.     The Mauneys' Remaining Arguments Lack Merit.

¶19      The Mauneys argue the superior court failed to consider Mollen's testimony and affidavit as a whole and failed to view the evidence in the light most favorable to them. The record, however, does not support that argument or that there is a genuine issue of material fact as to causation. *See Harris*, 207 Ariz. at 378 ¶ 12. The Mauneys thus failed to establish an essential element of their claims. The superior court did not err in granting summary judgment to Khan and Bhullar. Ariz. R. Civ. P. 56(a); *Orme School*, 166 Ariz. at 310.

## CONCLUSION

¶20      The judgment is affirmed. Khan and Bhullar are awarded their taxable costs on appeal contingent upon their compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:     AGFV