NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOSEPH SCHNURR, et al., *Plaintiffs/Appellants*,

*v.*

BANNER HEALTH, et al., *Defendants/Appellees*.

No. 1 CA-CV 24-0434

FILED 02-27-2025

Appeal from the Superior Court in Maricopa County
No. CV2019-097698
The Honorable Adam D. Driggs, Judge

**AFFIRMED**

COUNSEL

Shah and Associates, PLLC, Tempe
By Zaheer A. Shah
*Co-Counsel for Plaintiffs/Appellants*

Consumer Attorneys PLC, Scottsdale
By Michael Yancey III, David A. Chami *(argued)*
*Co-Counsel for Plaintiffs/Appellants*

Jones, Skelton & Hochuli, PLC, Phoenix
By Eileen Dennis GilBride *(argued)*
*Co-Counsel for Defendants/Appellees Banner Health dba Banner Gateway
Medical Center*

Slattery Petersen, LLC, Phoenix
By Elizabeth A. Petersen
*Co-Counsel for Defendants/Appellees Banner Health dba Banner Gateway
Medical Center*

## MEMORANDUM DECISION

Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Brian Y. Furuya and Vice Chief Judge Randall M. Howe joined.

**G A S S**, Chief Judge:

¶1        The father and sons of decedent K.G.[1] appeal the superior court's grant of summary judgment for Banner Health (Banner) on claims of medical malpractice and wrongful death. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        On December 17, 2017, K.G. began experiencing chest pain. Her father, Joseph Schnurr, took her to urgent care, where they were told to go to the emergency room. Schnurr then drove K.G. to Banner's emergency room.

¶3        Upon arrival, Schnurr signed a form titled Condition of Admission and Treatment (the admission form). The form told her "emergency room physician[s] . . . are generally not employees or agents of the hospital."

¶4        Kevin Aister, D.O., was K.G.'s emergency room physician at Banner. Banner furnished Dr. Aister with equipment and support staff who assisted with his treatment of K.G. Dr. Aister ordered an EKG, blood tests, and a chest x-ray. After diagnosing K.G. with pleurisy or lung inflammation, Dr. Aister discharged her. The next day, K.G. was found dead in her home from an aortic dissection.

¶5        When Dr. Aister treated K.G., he was under contract with Emergency Physicians Southwest, P.C. (EPS). Dr. Aister testified he had no "traditional employer-type arrangements" with Banner. Consistent with

---

[1]        We use initials to preserve the decedent's anonymity.

that testimony, Dr. Aister's employment contract was with EPS, not Banner. That contract:

- Required Dr. Aister "render professional medical services [] as an independent contractor of [EPS] at [Banner.]"

- Required Dr. Aister to render medical services "consistent with the applicable bylaws, policies, rules, agreements, and requests of [Banner.]"

- Required EPS to "determine the start time and duration of" Dr. Aister's shifts, "in conjunction with [Banner.]"

- Allowed EPS's "designated billing company . . . to bill and collect for" Dr. Aister's medical services.

- Allowed Dr. Aister to provide "services at other healthcare facilities."

Dr. Aister testified about his relationship with EPS and with Banner. He said he asked EPS, not Banner, for schedule adjustments and time off. He said EPS compensated him and provided him with retirement benefits and health insurance. Dr. Aister also said, "Banner did not direct the care that [he] provided to [his] patients . . . and [t]hat was done based upon his own medical judgment." And Dr. Aister owned and operated [his] own independent medical practice throughout the contract's term.

¶6        Schnurr and K.G.'s two sons (collectively plaintiffs) sued for medical malpractice and wrongful death, naming Dr. Aister, EPS, and Banner as defendants. After years of litigation, the court granted Banner summary judgment after finding Banner could not be liable for Dr. Aister's alleged negligence because no material fact established Dr. Aister was Banner's agent.

¶7        The court has jurisdiction over plaintiffs' timely appeal under Article VI, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101.A.1.

## DISCUSSION

¶8        Plaintiffs challenge the superior court's grant of summary judgment for Banner. Plaintiffs argue the court should reverse because of genuine disputed issues of material fact about Dr. Aister's actual or apparent agency with Banner.

3

**¶9** The court reviews grants of summary judgment *de novo*, viewing the evidence and all reasonable inferences in the light most favorable to plaintiffs as the non-moving party. *Roebuck v. Mayo Clinic*, 256 Ariz. 161, 165 ¶ 11 (App. 2023). Summary judgment is appropriate when "the facts produced in support of the claim or defense have so little probative value . . . that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990); *see also* Ariz. R. Civ. P. 56(a).

**¶10** Plaintiffs seek to hold Banner liable under a theory of respondeat superior, arguing Dr. Aister was Banner's agent. Plaintiffs bear the burden of proving an agency relationship, whether actual or apparent. *See Brown v. Ariz. Dep't of Real Est.*, 181 Ariz. 320, 326 (App. 1995). Because the moving party here, Banner, does not bear the burden of proof, it need only show the absence of evidence in the record supporting an essential element of the claim. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 117 ¶ 22 (App. 2008). Once the moving party makes that showing, the burden "shifts to the non-moving party to present sufficient evidence" of a genuine dispute of material fact. *Id.* at 119 ¶ 26.

## I. Dr. Aister was not Banner's actual agent.

**¶11** Plaintiffs argue the superior court erred when it found Dr. Aister was not Banner's actual agent. The existence of an actual agency relationship is generally a fact question and becomes a legal question only if all material facts are undisputed. *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 596 ¶ 21 (App. 2007). The material facts here are not in dispute.

**¶12** This case involves a doctor who staffed Banner's emergency room under a contract between the doctor's medical group and the hospital. Plaintiffs argue Dr. Aister was Banner's actual agent. To prevail on an actual agency claim, Plaintiffs must establish sufficient relational facts between Banner and Dr. Aister.[2] *See Evans v. Bernhard*, 23 Ariz. App. 413, 416–17 (1975); *see also Beeck v. Tucson Gen. Hosp.*, 18 Ariz. App. 165, 169–71 (1972);

---

[2] Arizona case law has blended the concepts of employer-employee relationships and actual agency relationships in the physician-hospital context. *See Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 55 (App. 1985) (establishing a test for actual agency and applying it in an employer-employee analysis); *Amick v. Banner Health*, 1 CA-CV 22-0401, 2023 WL 5217704, at *8 ¶ 46 (Ariz. App. Aug. 15, 2023) (mem. decision) (deriving the test for actual agency exclusively from employer-employee cases).

*Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 54 (App. 1985) ("[T]he fact that a physician or surgeon is on a hospital staff does not necessarily make him an employee of that hospital.").

**¶13** In assessing relational facts, the focus is the degree of the hospital's control over the physician. *See Gregg*, 145 Ariz. at 55 (acknowledging actual agency requires hospitals to have a right to control "the conduct of the alleged servant-physician"). In the context of an actual agency relationship between a hospital and a medical professional, the court has considered whether the following relational facts were true: (1) the hospital arranged services for the physician's patients, (2) the hospital handled all billing, (3) the hospital paid the physician and set his schedule, (4) the hospital furnished the facilities, equipment, and support staff, (5) the physician exclusively provided services at the hospital, (6) the physician headed a hospital department, and (7) the physician provided services under hospital rules and procedures. *See Beeck*, 18 Ariz. App. at 169–71.

**¶14** *Beeck* determined a radiologist was an employee and thus an actual agent of a hospital. *Id.* In *Beeck*, the radiologist held a leadership position at the hospital and signed a long-term contract agreeing not to practice elsewhere. *Id.* at 169. The hospital paid him, set his hours, handled billing, and provided him with facilities, equipment, and support staff. *Id.* at 170. The hospital had the right to control the radiologist's standards of performance and required him to comply with the hospital's rules and regulations. *Id.* Based on these facts, *Beeck* concluded the hospital exercised sufficient control to establish an employer-employee relationship. *Id.* at 170–71.

**¶15** Applying *Beeck*, a different result should occur here. Unlike the radiologist in *Beeck*, Dr. Aister had no contractual relationship with Banner. He held no leadership position at Banner. And he did not provide medical services exclusively at Banner; instead, he operated his own medical practice beyond providing services at Banner. Banner further did not pay Dr. Aister, set his schedule, or handle billing. Banner also did not control the way Dr. Aister rendered medical care. And the admission form shows Banner "generally" did not consider emergency room physicians, like Dr. Aister, "employees or agents of the hospital."

**¶16** That said, this case and *Beeck* are similar in two respects: (1) Banner furnished Dr. Aister with facilities, equipment, and support staff, and (2) Dr. Aister was required to comply with Banner's rules and regulations. But unlike *Beeck*, when the medical professional had to comply because of a direct contractual relationship with the hospital, Dr. Aister's

required compliance with Banner's rules and regulations stemmed from his contract with EPS, not with Banner. Further, those rules and regulations are not in the record, and nothing in the record suggests they allowed Banner to exercise enough control over Dr. Aister's conduct to make him Banner's actual agent. *See Gregg*, 145 Ariz. at 55.

¶17 Plaintiffs unavailingly rely on *Barrett v. Samaritan Health Servs.*, 153 Ariz. 138 (App. 1987). *Barrett* bears some factual similarities to the facts here. In *Barrett*, a medical group contracted to provide emergency medical care to a hospital, and one of the medical group's physicians acted negligently. *Id.* at 141. The hospital also provided nurses and support staff. *Id.* at 146. And the medical group's physicians had to follow the hospital's rules and procedures. *Id.*

¶18 Even so, *Barrett* is unpersuasive. *Barrett* concluded the medical group's liability for the physician's negligence extended to the hospital through apparent agency, not actual agency. *Id.* at 145–46. But *Barrett* did not articulate or use the test for apparent agency. Instead, it used the test for actual agency. *Id.* And in so doing, *Barrett* did not address the key factor for actual agency: the degree of control the hospital exercised over the physician. *Id.* And *Barrett* addressed none of the elements of apparent agency. *Compare Fadely v. Encompass Health Valley of Sun Rehab. Hosp.*, 253 Ariz. 515, 520 ¶ 15 (App. 2022) (recognizing apparent agency requires proof the principal intentionally or inadvertently led another "to believe an agency exists," and the party "justifiably relie[d] on the principal's representations") (internal quotations omitted) *with Barrett*, 153 Ariz. at 145–46 (finding apparent agency relationship by relying on *Beeck's* actual agency analysis).

¶19 On this record, the undisputed material facts do not establish an employer-employee relationship between Banner and Dr. Aister. *See Gregg*, 145 Ariz. at 55; *Beeck*, 18 Ariz. App. at 169–71. The evidence simply does not show Banner controlled Dr. Aister's rendering of medical care despite those limited similarities. *Id.*

## II. Dr. Aister was not Banner's apparent agent.

¶20 Plaintiffs also argue the superior court erred when it found Dr. Aister was not Banner's apparent agent. As noted above, apparent agency exists "only when (1) a principal intentionally or inadvertently leads one party to believe an agency exists, and (2) the party justifiably relies on the principal's representations." *Fadely*, 253 Ariz. at 520 ¶ 15 (internal quotations omitted).

¶21 Plaintiffs argue Banner led K.G. to believe Dr. Aister was its agent because it publicly advertised its services as a hospital and emergency room but these advertisements did not say Banner had independent contractors providing those services. Because the record includes no evidence of Banner's advertising, the court cannot consider it. *See Ness v. Western Sec. Life Ins. Co.*, 174 Ariz. 487, 500 (App. 1992) ("We cannot consider any evidence not contained in the record" in reviewing a grant of summary judgment.). That said, no evidence in the record suggests K.G. relied on Banner's advertisements in deciding to seek care in its emergency room. Indeed, the advertisements are not in the record. In fact, undisputed evidence shows K.G. went to Banner because the urgent care referred her there.

¶22 Plaintiffs next argue K.G. believed Dr. Aister was Banner's agent because, allegedly, "Banner directly assigned Dr. Aister . . . to provide [] medical care to [K.G.]" Similarly, no evidence in the record shows Banner assigned Dr. Aister to treat K.G. And nothing in the record suggests K.G. believed Banner had done so. Plaintiffs thus did not show the representation or justifiable reliance required for apparent agency.

¶23 Because no evidence in the record supports finding apparent agency, we need not address whether the admission form would preclude apparent agency. Still, Plaintiffs argue the admission form itself manifested an agency relationship because it implicitly told K.G. some physicians were agents. Plaintiffs waived this argument because they raised it for the first time in their reply brief. *See in re Marriage of Pownall*, 197 Ariz. 577, 583 ¶ 25 n.5 (App. 2000). Waiver aside, common sense undermines the argument. Nothing about that warning would lead patients to believe physicians are agents and any alleged reliance would be unreasonable and unjustifiable.

¶24 Finally, Plaintiffs ask the court to adopt a new test for apparent agency in the hospital-physician context. Plaintiffs argue apparent agency should exist if the hospital (1) "holds itself out as a provider of emergency room care" and (2) "the plaintiff relies upon the hospital to provide complete emergency room care." *Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 796 (Ill. 1993). This court cannot adopt such a test. *See Queen Creek Summit, LLC v. Davis*, 219 Ariz. 576, 580 ¶ 18 (App. 2008) ("[W]e are bound to follow supreme court precedent."). The proposed test contravenes longstanding Arizona Supreme Court precedent, which places the burden of proving agency on plaintiffs and says apparent agency requires a third party to rely reasonably on the principal's conduct in forming a belief about agency. *Reed v. Hinderland*, 135 Ariz. 213, 217 (1983) ("A party asserting the existence of an agency relationship bears the burden of proving it."); *Miller*

*v. Mason-McDuffie Co. of S. Cal.*, 153 Ariz. 585, 589 (1987) (holding apparent agency requires "conduct of a principal that allows a third party reasonably to conclude that an agent is authorized to make certain representations or act in a particular way"); *Canyon State Canners v. Hooks*, 74 Ariz. 70, 73 (1952) (holding apparent agency exists when the principal has "induced third persons to believe that such a person was its agent"). The court cannot adopt plaintiffs' proposed test because it is bound by Arizona Supreme Court precedent. *See Davis*, 219 Ariz. at 580 ¶ 18 (App. 2008).

## CONCLUSION

¶25        The superior court's ruling, granting summary judgment for Banner, is affirmed.

