488 P.2d 657

**Phelan PARRISH, Appellant,**

v.

**Tony CAMPHUYSEN, dba Twinkling Star
Cattle Company, Appellee.**

**No. 10444.**

Supreme Court of Arizona,
In Division.

Sept. 17, 1971.

Rehearing Denied Oct. 13, 1971.

Otto H. Linsenmeyer & Frank E. Dickey,
Jr. by Frank E. Dickey, Jr., Phoenix, for
appellant.

Evans & Kunz, Ltd. by Donald R. Kunz
and James A. Simmons, Phoenix, for appellee.

CAMERON, Justice.

This is an appeal from a jury verdict
and judgment which declared that the plain-

tiff, Phelan Parrish, and defendant, Tony Camphuysen, were partners and ordered a partnership accounting.

We are called upon to determine:

1. Whether the jury's finding that a partnership existed was supported by the evidence.

2. Whether the court's finding that the partnership did not include defendant's cattle operation in California, known as the Pala Ranch, was properly supported by the evidence.

3. Whether the accounting of the Special Master was clearly erroneous.

4. Whether the court was acting properly in excluding certain costs claimed by the plaintiff.

The facts necessary for a determination of this matter on appeal are substantially as follows. Prior to 1962, Tony Camphuysen and one John T. Hughes, formed a partnership for the purpose of buying and selling cattle. During the life of this partnership, Phelan Parrish was hired as an employee of the partnership. The partnership of Camphuysen and Hughes was dissolved, and in 1962 Tony Camphuysen and Phelan Parrish entered into a business relationship for buying and selling cattle in the State of Arizona under the business name of the Twinkling Star Cattle Company. Ruth Parrish, the wife of Phelan Parrish, was hired as bookkeeper for this operation. The relationship continued during the years of 1962 and 1963. In 1964 Phelan Parrish sued Tony Camphuysen, dba Twinkling Star Cattle Company, for $21,925.82, which he claimed was due to him, less set-offs, as a commission agent for the Twinkling Star Cattle Company. It was the contention of Phelan Parrish that the relationship between him and Camphuysen was one of employer-agent and that he, Phelan Parrish, as a commission agent, was to receive $1.00 per head for each purchase and for each sale, as remuneration for supervising the sale, care and feeding of said cattle.

The counterclaim of the defendant, Camphuysen, alleged that the relationship was one of a partnership with the plaintiff, Phelan Parrish, as the managing partner. Camphuysen also claimed that Ruth Parrish and Phelan Parrish misled him as to the operation of the partnership and that the books were kept in such a poor manner as to have led the partnership into a sizable loss.

The matter was tried before a jury and the jury returned special interrogatories in which they found that the relationship between Phelan Parrish and Tony Camphuysen was that of a partnership and that Phelan Parrish should make an accounting to Tony Camphuysen to determine whether the Twinkling Star Cattle Company had a profit or loss for the period of January, 1962 through April, 1963. (The trial court granted a motion for directed judgment in favor of Ruth Parrish.) On 16 September 1968 an interlocutory judgment was filed in favor of Tony Camphuysen and against Phelan Parrish. The judgment first declared that Tony Camphuysen and Phelan Parrish were partners in the Twinkling Star Cattle Company in Arizona; secondly, it excluded from the partnership the business operation at the Pala Ranch near Bonzo, California; and thirdly, it allowed commissions to Phelan Parrish for any cattle sold in connection with the Pala Ranch. The interlocutory judgment appointed a Special Master to conduct the accounting.

On 29 July 1969, after the report of the Special Master, a supplemental judgment was issued finding in favor of Phelan Parrish in the amount of $1,673.48, less costs, as a result of the accounting and ordering that, "the defendant, Tony Camphuysen, recover all of his taxable costs incurred through the end of the jury trial." The supplemental judgment also ordered "that plaintiff and counter-defendant Phelan Parrish recover all of his taxable costs incurred from and after the end of the jury trial to the date of the Master's Report." Defendant, Tony Camphuysen, filed a statement of costs in the amount of

$294.00 which was not objected to. Plaintiff, Phelan Parrish, filed a statement of costs in the amount of $4,334.60, of which $4,255.00 was under the caption "Accounting Fees as per attached statement which is incorporated by reference herein" and included accounting fees which occurred for the most part prior to the interlocutory judgment filed 16 September 1968. The trial court denied the amount for accounting fees.

## WAS THERE A PARTNERSHIP?

The question of whether the relationship between Parrish and Camphuysen was one of commission agent or partnership was thoroughly and completely argued, with voluminous testimony on both sides. In assessing the jury's determination that there was a partnership between plaintiff and defendant, this court must adhere to the well-established rule that where facts have been in dispute at the trial level, an appellate court will not disturb the findings of the jury unless the findings are clearly erroneous and without substantial support in the evidence. Reliable Electric Co. v. Clinton Campbell Contractor, Inc., 10 Ariz.App. 371, 459 P.2d 98 (1969); Johnson v. Hill, 1 Ariz.App. 290, 402 P.2d 225 (1965); and Bohmfalk v. Vaughan, 89 Ariz. 33, 357 P.2d 617 (1960). The testimony of the defendant was explicit:

"Q As I understand your testimony, Tony, the Twinkling Star organization was composed of yourself and Phelan Parrish as partners, is that right?

"A Right, sir.

\* \* \* \* \* \*

"Q What did you tell them?

"A I told them like I told them before I would clear things up. If there was a loss or if there was a profit we'd go one way or the other. It would be half profit or half loss."

The plaintiff testified, to the contrary, that he was a commission agent. The plaintiff's wife testified to a commission status, but with arguably costly admissions on cross-examination. This is not a case for an appellate court, working only from a barren record, to re-weigh all the testimony and overturn a jury finding that was supported by more than sufficient evidence. We find that the jury's determination that there was a partnership is supported by the evidence.

## DID THE COURT PROPERLY EXCLUDE THE PALA RANCH OPERATION IN THE PARTNERSHIP?

Plaintiff would also have us overturn the trial court's determination that the partnership did not include Pala Ranch, a California cattle ranch owned by defendant. Here again, the testimony was in conflict. Defendant contended that, although there was a partnership in Arizona, there was a commission agreement as to Pala Ranch and plaintiff was paid his commission. He stated:

"Q Would you relate the conversation?

"A The conversation on that came up this way, that I would like to have Mr. Parrish with me if he wanted to come, and Mrs. Parrish as a bookkeeper. But also I had a lot of dealings in California which I wanted to stay out of.

"Q Did you relate that to them?

"A Yes, I definitely made them understand that the trading that was done in California or the cattle that I run into California was to be my own. There was no partnership on those cattle except the trading that was done in the State of Arizona.

\* \* \* \* \* \*

"A And I definitely didn't want Mr. Parrish kind of in on that deal over there [California], but I did promise

him one thing, that if he sold any cattle or shipped any cattle out of Arizona into my operation in California, that I would pay him a commission.

"Q  Of how much?

"A  A dollar a head in and a dollar a head out of my California operation."

Plaintiff contended that there was no partnership at all, but if there was then it included the California operation. We believe the evidence supports the trial court in its determination that the partnership did not include the California operation. Mayo v. Ephrom, 84 Ariz. 169, 325 P.2d 814 (1958).

## WAS THE ACCOUNTING CLEARLY ERRONEOUS?

Petitioner's next contention is that the accounting of the Special Master was clearly erroneous. The main error alleged by the plaintiff was outlined in his reply brief:

"The accounting by the Master was incorrect because the trial court was incorrect, and the actions of the trial court and the Special Master were arbitrary and thus, clearly erroneous. The accounting conducted by the Special Master had to be incorrect because of the trial court's incorrect and premature limitations on the extent of the partnership * * *. The evidence was to the contrary."

Of course, this is simply a restatement of the plaintiff's claim—which was answered above—that the court should not have excluded the Pala Ranch from the partnership.

Plaintiff has other disagreements with the accounting. But even though there was a court reporter present at the hearing before the Master, no request was made for a transcript and therefore there is none before this court. In this situation, the presumption in favor of the validity of the Master's findings is strengthened. Rules 75(a) and (b), Arizona Rules of Civil Procedure, 16 A.R.S.; Visco v. Universal Refuse Removal Co., 11 Ariz. App. 73, 462 P.2d 90 (1969). Furthermore, plaintiff has not shown wherein the accounting was erroneous, and even if plaintiff could show minor errors, that would still not compel this court to reverse. The appellant is entitled to a fair accounting and not a perfect one. It is seldom possible in a case of this kind, especially when the books of the business have not been adequately kept, that the accounting be absolutely correct. See Fernandez v. Garza, 88 Ariz. 214, 354 P.2d 260 (1960); Mollohan v. Christy, 80 Ariz. 141, 294 P.2d 375 (1956); and Reliable Electric Co. v. Clinton Campbell Contractor, Inc., supra. We find no error in the accounting.

## DID THE COURT CORRECTLY ASSESS THE COSTS?

Finally, plaintiff contends that his accounting fees were improperly taxed and excluded as costs by the court. For several reasons we cannot agree with him. First, defendant was clearly the prevailing party in this case, and costs in Arizona are generally only collected by the prevailing party. § 12–341 A.R.S. Second, virtually all of the plaintiff's accounting was done gratuitously in the sense that it was done well before the interlocutory judgment of 12 September 1968 which ordered an accounting (and was quite inconsistent with that accounting, as it included the Pala Ranch in the partnership.) It was not done pursuant to "an order or agreement of parties." § 12–332, subsec. A, par. 6

A.R.S. Third, the accountant, under the circumstances was no more than an expert witness, and fees for expert witnesses are generally not allowed in Arizona. State ex rel. Morrison v. Jay Six Cattle Company, 88 Ariz. 97, 353 P.2d 185 (1960); State v. McDonald, 88 Ariz. 1, 352 P.2d 343 (1960). Under the Rules of Civil Procedure in effect at that time, the trial court had great latitude in assessing costs. Hurst v. Hurst, 1 Ariz.App. 277, 401 P.2d 232, Opinion Supplemented, 1 Ariz.App. 603, 405 P.2d 913 (1965), but see Rule 54(f), Rules of Civil Procedure, 16 A.R.S., as adopted effective 1 July 1970.

Judgment affirmed.

STRUCKMEYER, C. J., and HENRY S. STEVENS, Judge, Court of Appeals, concur.

*Note*: Vice Chief Justice JACK D. H. HAYS, having requested that he be relieved from consideration of this matter, Judge HENRY S. STEVENS, Court of Appeals, was called to sit in his stead and participate in the determination of this decision.