IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO


CHARTONE, INC.,                                )
                                               )
                          Petitioner,          )
                                               )
            v.                                 )          2 CA-SA 2003-0107
                                               )          2 CA-SA 2003-0108
THE HONORABLE DEBORAH                          )          (Consolidated)
BERNINI, Judge of the Superior Court           )          DEPARTMENT B
of the State of Arizona, in and for the        )
County of Pima,                                )          O P I N I O N
                                               )
                          Respondent,          )
                                               )
            and                                )
                                               )
RONALD D. MERCALDO, LTD., a                    )
professional corporation; LOUIS C.             )
WEBB, P.C., a professional corporation;        )
DURAZZO & ECKEL, P.C., a professional          )
corporation; and SMART PROFESSIONAL            )
PHOTOCOPY CORPORATION, a                       )
California corporation,                        )
                                               )
                    Real Parties in Interest.  )

_____        )
                                               )
SMART PROFESSIONAL PHOTOCOPY                    )
CORPORATION, a California corporation,          )
                                               )
                          Petitioner,           )
                                               )
            v.                                  )
                                               )
THE HONORABLE DEBORAH                           )
BERNINI, Judge of the Superior Court            )
of the State of Arizona, in and for the         )
County of Pima,                                 )
                                               )
                          Respondent,           )
                                               )
            and                                 )
                                               )

RONALD D. MERCALDO, LTD., a                )
professional corporation; LOUIS C.          )
WEBB, P.C., a professional corporation;     )
DURAZZO & ECKEL, P.C., a professional       )
corporation; and CHARTONE, INC.,            )
                                            )
              Real Parties in Interest.     )
                                            )

SPECIAL ACTION PROCEEDING

Pima County Cause No. C-315432

RELIEF GRANTED

---

Fennemore Craig
  By Andrew M. Federhar, Theresa Dwyer,
    and Lori A. Higuera

                                 Phoenix
             Attorneys for Petitioner ChartOne


Anson, Lammers & Barkley, P.C.
  By Stephen M. Barkley and Mark D. Lammers
                                 Tucson
      Attorneys for Petitioner Smart Professional
                       Photocopy Corporation


Mesch, Clark & Rothschild, P.C.
  By Douglas H. Clark, Jr., Scott H. Gan,
    and Gary J. Cohen
                                 Tucson
        Attorneys for Real Parties in Interest
                 Ronald D. Mercaldo, Ltd.;
                     Louis C. Webb, P.C.;
             and Durazzo & Eckel, P.C.

---

E S P I N O S A, Chief Judge.


¶1       In these consolidated special actions, petitioners ChartOne, Inc. and Smart Professional Photocopy Corporation (collectively, defendants) ask us to determine the scope of a trial court's authority under article VI, § 24 of the Arizona Constitution and Rule 53, Ariz. R. Civ.

2

P., 16 A.R.S., Pt. 1, to appoint a special master. Specifically, the primary issue in this case is whether a trial court may, in the absence of an agreement by the parties, appoint a special master to calculate a plaintiff's damages after a jury has found the defendant liable on the plaintiff's claim for breach of an implied contract. Additionally, we are asked to decide whether the respondent judge abused her discretion and violated the defendants' rights to a jury trial by vacating, after the jury trial on liability, a prior order bifurcating the jury trial into liability and damage phases and appointing a special master to calculate the damages. For the reasons stated below, we accept jurisdiction of these special actions and grant relief.

## FACTS AND PROCEDURAL BACKGROUND

¶2        ChartOne and Smart Professional are contractors that provide medical records production services to medical practices, hospitals, and other medical groups. They retrieve patients' records after reviewing a request for their production, photocopy the records, and release them after reviewing the authorization for their release. Real parties in interest (collectively, plaintiffs) are personal injury attorneys who filed a class action lawsuit in 1996 against ChartOne, Smart, and another defendant, alleging numerous claims which, by the time of trial in February 2003, had been reduced to a claim for breach of implied contract. The claim was based on plaintiffs' allegation that defendants had violated A.R.S. § 12-2295[1] by charging unreasonable fees for their services.

¶3        In January 2003, about two weeks before trial, plaintiffs requested that the respondent judge bifurcate the impending jury trial into two phases: liability and damages.

---

[1]The statute provides, in relevant part, as follows: "[A] health care provider or contractor may charge a person who requests copies of medical records a reasonable fee for the production of the records." A.R.S. § 12-2295(A).

Defendants objected, arguing that the two issues were inextricably intertwined. In response, the judge bifurcated the trial but ordered that the same jury would hear both phases if liability were found. The liability portion began on February 12. At times during that phase, the parties were prevented from introducing evidence that related to damages, and the judge refused instructions and interrogatories on that topic. Toward the end of the liability trial, the parties and the judge began discussing the special verdict forms and interrogatories that were to be submitted to the jury. During these discussions, the judge at times acknowledged the difficulty of conducting a bifurcated proceeding. Illustrative of problems encountered was defendants' argument in support of their motion for judgment as a matter of law, pursuant to Rule 50, Ariz. R. Civ. P., 16 A.R.S., Pt. 1; they asserted plaintiffs had no evidence of damages and would be unable to sustain their burden of proving those damages in the damage phase of the trial. Defendants also argued that plaintiffs had failed to sustain their burden of proving in the liability phase an essential element of a claim for breach of contract: that damages had resulted from the alleged breach.

¶4 From time to time, the judge questioned her decision to bifurcate the trial. She also expressed concern about compelling the jury to review the many boxes of invoices and other documents that purportedly would establish plaintiffs' damages and stated she was inclined to appoint a special master to review the information and calculate the damages if liability were found. While the jury was deliberating on the issue of liability, the judge vacated her prior order bifurcating the trial and stated that, if the jury found defendants liable, she would appoint a special master to calculate the damages. Defendants objected and asked the judge to reconsider, arguing they had been prejudiced in conducting their defense by defending only on the question of liability and not damages. They further argued that the judge essentially had relieved plaintiffs of their burden of proving damages, an essential element of a breach of contract action. Finally,

4

defendants argued that appointing a special master in this situation would violate Rule 53(b), Ariz. R. Civ. P.

¶5        The jury returned a verdict in favor of plaintiffs, finding unreasonable the fees defendants had charged during the period alleged in plaintiffs' complaint. The jury specified what it deemed were reasonable fees. Two days later, plaintiffs filed an application to appoint a special master, proposing that the judge select one of three nominees and that she order the defendants to pay the fees of the person appointed. Again, defendants objected. After it became clear the judge did not intend to reverse her decision to appoint a special master, defendants agreed to one of the candidates, but the judge ultimately ruled that plaintiffs could select one of the three and that defendants would be required to pay for his services as part of their taxable costs. Plaintiffs selected one of the two candidates that defendants had rejected. Thereafter, defendants not only objected to the special master plaintiffs had selected but reiterated their objections to the appointment of a special master in general. The judge refused to reconsider her orders but agreed to stay all further proceedings while defendants filed separate special actions challenging her rulings, stating, at one point, that she looked forward to clarification by this court. Pursuant to the request of all parties, we have consolidated the special actions in order to do so.

## SPECIAL ACTION JURISDICTION

¶6        Defendants challenge the respondent judge's decisions to vacate her order bifurcating the trial after she had allowed the case to proceed through the liability phase; to appoint a special master to calculate plaintiffs' damages; and to permit plaintiffs to select the special master of their choice, rather than the candidate the parties had agreed could be appointed. All parties urge this court to accept special action jurisdiction in order to address these issues. We find it appropriate for us to do so for several reasons.

¶7 First, defendants have no equally plain, speedy, or adequate remedy by appeal. See Ariz. R. P. Special Actions 1, 17B A.R.S. As defendant ChartOne points out, there is authority for the proposition that an order appointing a special master is not an appealable order and that special action review of such an order is appropriate. See Bolon v. Pennington, 3 Ariz. App. 433, 415 P.2d 148 (App. 1966); see also La Buy v. Howes Leather Co., 352 U.S. 249, 77 S. Ct. 309, 1 L. Ed.2d 290 (1957); United States v. Microsoft Corp., 147 F.3d 935 (D.C. Cir. 1998); Prudential Ins. Co. of Am. v. U.S. Gypsum Co., 991 F.2d 1080 (3d Cir. 1993); Burlington N. R.R. Co. v. Dep't of Revenue, 934 F.2d 1064 (9th Cir. 1991).

¶8 Second, the propriety of the judge's order with respect to the application of article VI, § 24 of the Arizona Constitution and Rule 53, Ariz. R. Civ. P., raises questions of law, which are particularly appropriate for special action review. State ex rel. Romley v. Fields, 201 Ariz. 321, 35 P.3d 82 (App. 2001) (when question presented in special action is one of law, acceptance of special action may be appropriate); see also Greenwald v. Ford Motor Co., 196 Ariz. 123, 993 P.2d 1087 (App. 1999) (interpretation of supreme court rule is question of law). So, too, is the question whether the judge's orders resulted in a violation of defendants' constitutional right to a jury trial. See Mendez v. Robertson, 202 Ariz. 128, 42 P.3d 14 (App. 2002).

¶9 Third, acceptance of special action jurisdiction may be appropriate when the questions raised are of statewide importance and of first impression. Inzunza-Ortega v. Superior Court, 192 Ariz. 558, 560, 968 P.2d 631, 633 (App. 1998) (court of appeals "will accept special action jurisdiction in a case that raises a constitutional issue of first impression and statewide importance"); see also State ex rel. Pennartz v. Olcavage, 200 Ariz. 582, ¶8, 30 P.3d 649, ¶8 (App. 2001) (acceptance of special action jurisdiction appropriate "in cases involving a matter of first impression, statewide significance, or pure questions of law"). The parties maintain that the

issues in this case may be so characterized, further justifying our acceptance of special action jurisdiction.

¶10 Finally, as all the parties note, even assuming there is a remedy by appeal, if we were to conclude, as we do, that relief is appropriate, by addressing the issue now, the unnecessary expenditure of time and money associated with a special master's review of an extensive amount of materials and calculation of damages is avoided. See Trebesch v. Superior Court, 175 Ariz. 284, 855 P.2d 798 (App. 1993) (suggesting acceptance of special action jurisdiction appropriate when decision on merits may prevent expenditure of judicial resources); see also Cobell v. Norton, 334 F.3d 1128 (D.C. Cir. 2003) (pointing out inadequacy of appellate relief for challenge to appointment of special master).[2]

¶11 There are sufficient reasons to accept jurisdiction of these special actions. And, because we find the respondent judge exceeded her authority, erred as a matter of law, and abused her discretion, we grant relief. See Ariz. R. P. Special Actions 3.

## RULE 53 DOES NOT AUTHORIZE THE APPOINTMENT OF A SPECIAL MASTER

¶12 Article VI, § 24 of the Arizona Constitution provides that "[j]udges of the superior court may appoint court commissioners, masters and referees in their respective counties, who shall have such powers and perform such duties as may be provided by law or by rule of the Supreme Court." The provision is not self-executing; rather, it anticipated the enactment of legislation or the promulgation of supreme court rules. See Calmat of Ariz. v. State ex rel. Miller, 176 Ariz.

[2]Noting the discretionary nature of our jurisdiction in special actions, plaintiffs state that this court "may" exercise its discretion here and that, if it does, "it will preclude the doubtful possibility that Plaintiffs will waste thousands of dollars and countless hours having the special master calculate each class' aggregate damages."

190, 859 P.2d 1323 (1993) (a constitutional provision is self-executing if it is effective immediately and does not require ancillary legislation or other action); see also Ariz. Indep. Redistricting Comm'n v. Fields, 206 Ariz. 130, 75 P.3d 1088 (App. 2003) (self-executing constitutional provision does not require additional legislation). Our supreme court addressed that topic in Rule 53, which was among the initial Rules of Civil Procedure the supreme court adopted in 1956. It provides in relevant part in subsection (a) that "[t]he court in any action to be tried without a jury may appoint a special master therein. As used in these Rules the word 'master' includes a referee, an auditor, and an examiner." Subsection (b) states that "[a] reference to a master shall be the exception and not the rule. Save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it."

¶13 Defendants contend the respondent judge had no authority to appoint a special master. They argue that the appointment of a special master violates the clear language of Rule 53. We agree.

¶14 The interpretation of a court rule is a question of law that we review de novo. Greenwald. As this court recently stated in Bergeron ex rel. Perez v. O'Neil, 205 Ariz. 640, ¶16, 74 P.3d 952, ¶16 (App. 2003) (brackets in Bergeron):

> In determining the meaning of a rule promulgated by the supreme court, "we apply principles of statutory construction." State v. Baca, 187 Ariz. 61, 63, 926 P.2d 528, 530 (App. 1996). Consequently, "[o]ur primary objective is to discern and give effect to the intent of . . . our supreme court in promulgating [the rule]." Vega v. Sullivan, 199 Ariz. 504, ¶8, 19 P.3d 645, ¶8 (App. 2001). "[W]e focus on the language of the . . . rule and, if it is inconclusive or ambiguous, we then consider other factors such as [its] context, subject matter, effects, consequences, spirit, and purpose." Id.

Rule 53 appears clear on its face. It allows a trial court to appoint a special master in "exceptional" circumstances but only "in any action to be tried without a jury." Ariz. R. Civ.

P. 53(a) and (b). Inasmuch as the parties had a right to a jury trial in the underlying case and that it was, in fact, tried to a jury, albeit in a bifurcated proceeding, neither Rule 53 nor article VI, § 24 of the constitution authorized the respondent judge to appoint a special master.

¶15        Even though Rule 53 "is so clear on its face that we need not look to its history, context, spirit, or purpose to construe it, our interpretation of [the] Rule . . . is only reinforced by that exercise." Bergeron, 205 Ariz. 640, ¶18, 74 P.3d 952, ¶18. The source of the rule was Rule 53 of the Federal Rules of Civil Procedure. That rule provided, until it was recently amended,[3] that "[t]he court in which any action is pending may appoint a special master therein." Fed. R. Civ. P. 53(a). Subsection (b) provided:

> A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

Our supreme court excised the portion of the federal rule relating to jury trials and changed the language to provide that a court may only appoint a special master in cases that are not being tried to a jury. And the supreme court struck all related references to jury trials that had been in subsections (g) and (h) of the proposed rule, deleting proposed subsection (i), which pertained to reports by a master in cases tried to a jury. That the supreme court intended not to authorize courts to appoint a special master in actions to be tried to a jury is patently clear. And, given the

---

[3]Effective December 1, 2003, the federal rule states: "Unless a statute provides otherwise, a court may appoint a master only to . . . perform duties consented to by the parties" and, in cases that are not being tried to a jury, "if appointment is warranted by . . . some exceptional condition, or . . . the need to perform an accounting or resolve a difficult computation of damages." Fed. R. Civ. P. 53(a)(1)(A) and (B)(i) and (ii). Thus, the amended federal rule now mirrors Arizona's rule.

provisions of the federal rule it refused to adopt, the federal cases that plaintiffs rely on have little, if any, persuasive value.

¶16     In vacating the bifurcation order and appointing a special master of plaintiffs' choosing, the respondent judge rejected defendants' repeated objections that she lacked the authority to appoint a special master. She also rejected their arguments that she had relieved plaintiffs of their burden of establishing an essential element of their breach-of-implied-contract claim and had violated their right to a jury trial on the issue of damages. The judge's comments in response to defendants' arguments reflect that her primary reasons for appointing a special master and her belief that she was authorized to do so were that she did not believe any questions of fact remained on damages and that it would be burdensome for the jury to review the many boxes of supporting documents. The judge expressed the latter concern early in the case, stating at the hearing on plaintiffs' request to bifurcate the trial, "we shouldn't have to have this jury go through all these invoices and figure out the difference between what they calculate as reasonable and what was charged on an invoice."

¶17     On the seventh day of trial, as the liability phase drew to a close and the judge began to question why she had bifurcated the trial in the first place, she told the parties she was considering appointing a master. She stated:

> [W]e're still looking at bifurcation that has no meaning, and whether or not [there are] damages in this case is [determined by] simply . . . making the calculations on the special verdicts that I showed drafts of this morning or whether it's . . . based on everything that's back in those boxes, I'm probably going to intervene over everyone's objection and say that I'm not making the jury go through all these boxes. It's just not happening. And I may order . . . this [to] go to a special master depending on answers to the interrogatories that are in that special verdict.

10

¶18 On the ninth day of trial, while the jury was deliberating on the question of liability, the judge vacated the bifurcation order and stated that, if the jury were to find in favor of plaintiffs on the question of liability, she would appoint a special master. Defendants immediately asked the judge to reconsider that order. Rejecting that request, the judge commented it now appeared to her that the issues of liability and damages did overlap and that, in fact, the jury had been given information related to damages. She stated that "the final step left is for the paperwork to be reviewed by someone in a position to go through it and be fair to all the parties in this case." The judge added, "I don't see that as an issue that needs to be resolved by a jury in order to . . . preserve due process rights, because I think that it's no longer an issue of factual dispute."

¶19 With respect to defendants' argument that she was not authorized to appoint a special master under Rule 53, the judge said:

> You're correct, looking at Rule 53(a) it only discusses under the Arizona Rules of Civil Procedure the appointment of a special master in actions to be tried without a jury. 53(b) also again emphasizes to all of us that the use of a master is the exception and not [the] rule. In this case I feel the exception in this case is the most appropriate way to be fair to everyone . . . so that there are no mistakes that could be made by the jury going through the voluminous paperwork and it's also the fairest thing to this jury.

> I think asking them to do that final ministerial act is something that would be inappropriate for the Court to ask.

¶20 The judge erred as a matter of law, thereby abusing her discretion. See Twin City Fire Ins. Co. v. Burke, 204 Ariz. 251, ¶10, 63 P.3d 282, ¶10 (2003), quoting Grant v. Ariz. Pub. Serv. Co., 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982) ("[W]hen a judge commits an 'error of law . . . in the process of reaching [a] discretionary conclusion,' he may be regarded as having abused his discretion."). Nothing in the rule authorizes the appointment of a special master in this

11

case based on exceptional conditions, even assuming such conditions existed.[4] A jury trial was requested, and notwithstanding the confusion that resulted from the bifurcation order, the action cannot be characterized as an "action to be tried without a jury." Ariz. R. Civ. P. 53(a).

¶21 Relying extensively on State v. Tackman, 183 Ariz. 236, 902 P.2d 1340 (App. 1994), both below and in the special actions, plaintiffs insist a trial court has inherent authority to appoint a special master. But Tackman was a criminal case in which the court had appointed a special master to assist the court in determining the amount of restitution the defendant should be ordered to pay. Not only is Rule 53 inapplicable to a criminal action, but a restitution hearing is a nonjury proceeding and is never part of the criminal trial on the offense alleged. Tackman is inapposite to a civil matter that is unequivocally governed by the rules of civil procedure, including Rule 53.

¶22 Plaintiffs' reliance on Parrish v. Camphuysen, 107 Ariz. 343, 488 P.2d 657 (1971), is similarly misplaced. The plaintiff in that case claimed he was owed money as a commission agent. The defendant insisted the two were partners. The jury agreed with the defendant and found that a partnership accounting was necessary. Based on those findings, the court ordered an accounting and appointed a special master to complete it. But it appears the parties never objected to the appointment. Indeed, on appeal, the plaintiff primarily challenged the jury's conclusion that

---

[4]We are not persuaded that exceptional conditions existed here, in any event. On numerous occasions, the respondent judge commented that the calculation of damages would not be particularly difficult, characterizing it as a "ministerial" task involving straightforward mathematical calculations. And plaintiffs themselves argued in support of the judge's decision to appoint a special master and vacate the prior order bifurcating the trial that determination of their damages was "a simple mathematical calculation." Both the judge and plaintiffs were of the opinion that the task of going through the many boxes of invoices and other documents was simply too burdensome for the jury.

the two were partners and the accuracy of the special master's accounting, not the appointment itself.

¶23     We also reject plaintiffs' argument that Rule 23, Ariz. R. Civ. P., 16 A.R.S., Pt. 1, which governs class actions, authorized the appointment of a special master, notwithstanding Rule 53 and its limited applicability to nonjury proceedings. We find nothing in Rule 23, nor have plaintiffs cited any persuasive authority, to support this argument. That this action for breach of an implied contract was certified as a class action did not render other rules of civil procedure inapplicable, nor did it divest the parties of other procedural or constitutional protections or rights. (See infra.) Moreover, there are no conflicts between the two rules. As plaintiffs point out, the general provisions of Rule 23 do authorize a trial judge to enter orders designed to facilitate the expeditious, economic management of a case. See, e.g., Ariz. R. Civ. P. 23(d) (authorizing court to enter orders to prevent undue repetition or complication of presentation of evidence). But Rule 53 addresses the specific issue of special masters; Rule 23 is silent on that issue. If the supreme court had intended Rule 53 to be inapplicable to class action suits, it could have so provided.

¶24     Moreover, we find unpersuasive plaintiffs' point that courts have "equitable powers" in class actions and their suggestion that somehow this permits them to dispense with other procedural rules or substantive law in the name of judicial economy and "fairness to the litigants." Certification of this case as a class action did not transform it into a proceeding at equity. And, in any event, there is still a right to a jury trial "whether the case falls in equity or in law." City of Tucson v. Superior Court, 165 Ariz. 236, 242 n. 5, 798 P.2d 374, 380 n. 5 (1990).

¶25     The judge's comments at the end of the liability phase of the trial suggest that she concluded she could appoint a special master under Rule 53 because she did not believe there were any factual issues for a jury to decide after the liability portion of the trial was completed. But,

13

again, nothing in the rule itself supports such an interpretation; indeed, such an action is contrary to the plain meaning of the rule. The underlying action began as a case to be tried to a jury, and that status was not changed by the judge's bifurcation order. Nor could the judge change the nature of the action for purposes of the rule simply by vacating that order after the first phase of trial had been completed. Plaintiffs never filed a motion for summary judgment on damages, although it was incumbent upon them to do so to obtain a judicial determination that no questions of fact existed on damages and that the amount of damages could be determined as a matter of law. See Campbell v. Robert Bosch Power Tool Corp., 795 F. Supp. 1093 (M.D. Ala. 1992).

¶26    Moreover, even assuming arguendo that the rule could be construed as permitting the appointment of a special master when some issues are tried to a jury but no questions of fact exist on other issues, the judge nevertheless erred. Based on the record the parties have provided us, the judge's conclusion that there were no longer any factual questions on plaintiffs' damages was erroneous. We discuss this issue more thoroughly below because it overlaps with some of defendants' remaining claims.

### APPOINTMENT OF A SPECIAL MASTER DEPRIVED DEFENDANTS OF THE RIGHT TO A JURY TRIAL, WAS UNFAIR AND PREJUDICIAL, AND IMPROPERLY RELIEVED PLAINTIFFS OF THEIR BURDEN OF PROVING DAMAGES

¶27    We first address defendants' claim that it was simply unfair for the respondent judge to bifurcate the trial, permit the case to be tried on the issue of liability, and then vacate the bifurcation order and the damage trial. We agree. We find persuasive defendants' assertion that they would have tried the case differently had they known there would be no trial on damages.

¶28    What occurred here is analogous to what took place in Henry ex rel. Estate of Wilson v. HealthPartners of Southern Arizona, 203 Ariz. 393, 55 P.3d 87 (App. 2002). There,

14

the trial court initially denied the defendant's request to read allegations in the plaintiff's complaint to the jury at the beginning of the trial. But later, after the trial concluded, the court reversed itself and read the allegations. Although we found that the court had correctly ruled that the allegations of a complaint can be read to a jury, we concluded that the plaintiff was entitled to a new trial, which the trial court had granted but for a different reason, because the timing of the court's order had been unfair and prejudicial to the plaintiff.

¶29    As previously noted, here, the judge herself questioned the propriety of the bifurcation order as the trial progressed. As a consequence, the trial proceeded with a certain lack of direction and clarity. It appears that some evidence was precluded on the ground it related to damages, not liability. Yet, at the end of the trial, the judge maintained that evidence relating to damages had been admitted, essentially penalizing defendants for failing to establish factual issues relating to damages. We conclude, therefore, that although a trial judge generally has discretion to determine how best to manage a case before him or her, here the judge abused that discretion, resulting in unfair prejudice to the defendants. See Taylor v. DiRico, 124 Ariz. 513, 606 P.2d 3 (1980) (trial court has great discretion in controlling conduct of trial); State v. Just, 138 Ariz. 534, 550, 675 P.2d 1353, 1369 (App. 1983) ("The trial court has full discretion in the conduct of the trial, and that discretion will not be overturned on appeal absent a clear showing of an abuse of discretion.").

¶30    The judge's rulings also deprived defendants of their right to a jury trial on damages and relieved plaintiffs of their burden of establishing damages as an essential element of their breach-of-contract claim. It is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages. Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab., 5 Ariz. App. 48, 423 P.2d 124

15

(1967); see also Gilmore v. Cohen, 95 Ariz. 34, 36, 386 P.2d 81, 82 (1963) (burden is on plaintiff in action for breach of contract to prove damages "with reasonable certainty"). Equally well established is the right to a jury trial in a breach-of-contract case. U.S. Const. amend. VII; Ariz. Const. art. II, § 23; Ariz. R. Civ. P. 38(a), 42(b), 16 A.R.S., Pt. 1; Tanner Cos. v. Superior Court, 123 Ariz. 599, 601 P.2d 599 (1979). Our supreme court made this particularly clear on the issue of damages in Perkins v. Komarnyckyj, 172 Ariz. 115, 834 P.2d 1260 (1992). In that dental malpractice action, the trial court had told the jurors ex parte that any of them who would be voting against liability should not participate in determining the remaining issues, including damages. Finding the trial court had erred and remanding the case for a new trial on damages and liability, the supreme court stated: "The principle is simple. The constitutional right of trial by jury carries with it the right to have every issue tried by the jury that has been empaneled, not by two-thirds of that jury, or three-fourths, or any other fraction." Id. at 118, 834 P.2d at 1263.

¶31        At the heart of the respondent judge's decision to vacate the bifurcation order and permit plaintiffs to select a special master was the premise that there were no longer any questions of fact left for the jury to decide after the liability phase of the trial had concluded. That premise was fatally flawed. It was based, in part, on the fact that the judge believed evidence on damages had already been presented during the liability phase of the trial and that the special verdict and interrogatories that had been submitted to the jury had required them to consider any factual issue relating to damages.[5] But, as noted earlier, because defendants had justifiably believed they were

_____

[5]The judge commented as follows during the hearing on the last day of trial about her intention to vacate the bifurcation order and appoint a special master:

> [A]s the Court envisioned the original interrogatory and I was
> sharing the Court's version of them it was clear to me that there was
> no bifurcation, that in fact the issue of damages did go to the

16

only trying the issue of liability, it was unfair to penalize them for conducting their defense accordingly. Additionally, the judge apparently believed, as do plaintiffs, that in rulings before trial and during the settling of the jury instructions and the verdict forms and special interrogatories, the judge had rejected the defenses that defendants would have raised on damages and that there was nothing left for them to argue at a trial on damages. That belief, however, is undercut by close examination of the motions, findings, and rulings below.

¶32      In their response to the petitions for special action, plaintiffs maintain that the judge rejected defendants' "defenses . . . as a matter of law . . . no less than eight times before trial," listing those instances. The defenses included, primarily, lack of standing, voluntary payment, waiver or estoppel, and failure to mitigate damages. But, given the context in which the judge had made those rulings, none eliminated all questions of fact that could be presented in a jury trial on the issue of damages. We address each instance, combining those that overlap.

¶33      (1)   December 18, 1997, finding that "the doctrine of voluntary payment is not applicable to this case." The finding was made by Judge Lee in ruling on defendants' motions for

jury. . . .

        By giving the . . . interrogatories that I did over the objections of ChartOne, the Court felt it was giving the issue of damages, at least the part that was subject to dispute and fairly should be resolved by a jury . . . .

        . . . . [T]he court feels that the final calculation is not really an issue subject to dispute, that the issues that could have been subject to dispute factually will have been resolved, and that the final step left is for the paperwork to be reviewed . . . .

        I don't see that as an issue that needs to be resolved by a jury in order to I guess preserve due process rights, because I think that it's no longer an issue of factual dispute.

17

summary judgment in which defendants sought dismissal of the claims as a matter of law. That ruling, even assuming it was correct, did not eliminate the defense to the amount of damages or other fact-based defenses that could be raised in a damages trial.

¶34 (2) December 15, 1998, order by Judge Lee dismissing claims of certain plaintiffs as to defendant PMSI, which is not a party to this special action, and certifying the remaining plaintiffs in classes. Plaintiffs maintain the judge "necessarily rejected Defendants' voluntary payment/waiver/estoppel and standing/pass-on defenses by certifying a separate class action by Plaintiffs against each of the Defendants." We fail to see how that order can be construed as a rejection of these defenses as they might relate to the amount of damages. And, again, it did not eliminate other fact-based defenses that could be raised in a damages trial.

¶35 (3) December 15, 1998, denial of PMSI's motion to dismiss based on its contention that the attorney plaintiffs had been reimbursed for services by their clients, and April 26, 1999, order denying PMSI's motion for reconsideration. First, this ruling related to neither defendant in this case. Second, PMSI was seeking dismissal of the claims as a matter of law, and the judge's rejection of the defense in that context was not necessarily a rejection of that defense as it might possibly relate to the amount of damages. Again, the judge's ruling did not eliminate other fact-based defenses that could be raised in a damages trial.

¶36 (4) June 17, 1999, finding, as a matter of law, that the voluntary payment doctrine does not bar plaintiffs' action; denial of defendant Smart's motion for summary judgment based on voluntary payment or waiver; March 28, 2002, denial of defendants' motion for summary judgment asserting client reimbursement as an absolute bar to all claims; October 9, 2002, denial of motion for reconsideration of rejection of plaintiffs' lack of standing as an absolute defense, based on the fact that overcharges are passed on to clients by the attorney plaintiffs; and February

18

3, 2003, denial of defendants' motion in limine, excluding from evidence invoices for which plaintiffs had been reimbursed by their clients. Again, defendants were seeking dismissal of the claims as a matter of law, and the judge's rejection of the defense in that context was not necessarily a rejection of that defense as it might possibly relate to the amount of damages, nor did it eliminate other fact-based defenses that could be raised in a damages trial.

¶37        Plaintiffs also contend that the judge's rejecting the proposed jury instructions relating to defendants' defenses on damages was yet another instance in which the judge rejected those defenses as a matter of law. But as defendant ChartOne notes, at this point, the judge had not yet vacated the bifurcation order and the parties had been led to believe that only the issue of liability was being tried. Thus, to the extent the defenses could be asserted in a damages trial, it was not the proper time for such instructions. As ChartOne points out, toward the last days of trial, when the judge expressed her uncertainty about having bifurcated the proceeding, she equivocated on whether instructions such as those ChartOne had proposed should be given at a trial that was supposed to have been a liability trial only, particularly given the judge's belief that damages evidence had been admitted. She did not state or even suggest that such instructions would never be appropriate. Indeed, her comments suggest the contrary. Counsel asked the judge whether there would be another opportunity to "address damage instructions again" if the jury found against defendants on liability. The judge responded, "Yeah, let's see where we are when we get a verdict on what we're giving them."

¶38        Defendants have specified the kinds of fact-based defenses they would present in a jury trial on damages. Among them are the following, which ChartOne pointed out to the judge in opposing her decision to vacate the bifurcation order and appoint a special master:

> Number one, were bills paid?  Was there bad debt?  Did attorneys pay i[n] full?  There were going to be disputes over whether [defendants] accepted less than full payment or got full payment . . . .  So there are going to be factual disputes over whether things were or were not paid, paid in full, and thus the amount of damages that Plaintiffs are entitled to recover.

Additionally, defendants have asserted that plaintiffs might have failed to mitigate damages by requesting medical records in those cases in which a lawsuit had already been filed pursuant to § 12-2295 rather than by utilizing the less expensive subpoena process provided in A.R.S. § 12-351.  And, defendants might seek to assert the defense of waiver for charges incurred after they filed the underlying lawsuit.  Thus, even assuming some of the defenses the court rejected before the liability portion of the trial are not available in a trial on damages, defendants have identified other fact-based defenses that a jury arguably might be entitled to consider.

¶39        The effect of the judge's orders was, first, to relieve plaintiffs of their burden of proving damages, giving that responsibility instead to the special master of plaintiffs' choosing. Troubling, too, is the fact that the special master's report was to be based on documents that had yet to be introduced into evidence. It is plaintiffs' burden to establish adequate foundation for the documents that purportedly support their damages claim; to present a precise amount of damages "with reasonable certainty," Gilmore, 95 Ariz. at 36, 386 P.2d at 82; and to provide any additional documentary or testimonial evidence that will assist a jury in determining the amount of damages.  In sum, the judge's order also violated defendants' right to have a jury consider issues of fact that might remain on plaintiffs' damages.

## CONCLUSION

¶40        For all of the foregoing reasons, the respondent judge's order vacating the bifurcation order she had entered before the trial on liability and her decision to appoint a special

master of plaintiffs' choosing was erroneous. The judge exceeded her jurisdiction and abused her discretion, entitling defendants to special action relief. In light of this conclusion, we need not address defendants' claim that the judge erred by permitting plaintiffs to select the special master.

¶41 The nature of the claim and the record we have been provided from the liability phase of the trial suggest that, although the issues of liability and damages overlap, they do not appear to be so "inextricably [i]nterwoven," that it would be an "injustice" to either party to have a trial on damages only. Anderson v. Muniz, 21 Ariz. App. 25, 28, 515 P.2d 52, 55 (1973); see also Styles v. Ceranski, 185 Ariz. 448, 916 P.2d 1164 (App. 1996). Evidence was admitted in the liability phase of the trial to establish, generally, the fact that plaintiffs had been damaged by defendants' charging fees the jury found unreasonable, without regard to the specific amount of damages involved. That evidence showed what defendants typically charged plaintiffs for production and duplication services. But in a damages trial, plaintiffs must establish the precise amount of their damages. Thus, some evidence that was presented in the liability trial may be duplicated in the damages phase.

¶42 Additionally, although there might have been errors in the first phase of the trial, errors that could be the subject of an appeal, the errors complained of here involve the judge's elimination of a damages trial; defendants are not complaining that such errors affected the fairness of the jury's determination that they had violated § 12-2295(A) and what it considered a reasonable fee. See Styles (extent of effect of errors in one portion of trial proper consideration for whether new trial on liability and damages is necessary on remand); see also Englert v. Carondelet Health Network, 199 Ariz. 21, 13 P.3d 763 (App. 2000) (Espinosa, C.J., dissenting) (finding retrial only on damages sufficient in wrongful death action); Sedillo v. City of Flagstaff, 153 Ariz. 478, 737 P.2d 1377 (App. 1987) (ordering retrial on damages only in wrongful death action); Phoenix Title

21

& Trust Co. v. State ex rel. Herman, 5 Ariz. App. 246, 425 P.2d 434 (1967) (ordering retrial in condemnation action on severance damages only).

## DISPOSITION

¶43     For the reasons stated above, in the interest of judicial economy, and because "a fair trial could be given on the issue of damages alone," Martinez v. Schneider Enterprises, Inc., 178 Ariz. 346, 349, 873 P.2d 684, 687 (App. 1994), we vacate the respondent judge's order appointing a special master of plaintiffs' choosing and vacating her previous order bifurcating the trial. Pursuant to Rule 4(g), Ariz. R. P. Special Actions, and A.R.S. § 12-341.01, defendants are awarded their reasonable attorney fees and costs incurred in connection with the special actions upon compliance with Rule 21(c), Ariz. R. Civ. App. P., 17B A.R.S.


_____

PHILIP G. ESPINOSA, Chief Judge

CONCURRING:


_____
JOHN PELANDER, Presiding Judge


_____
PETER J. ECKERSTROM, Judge


22